STATE OF VERMONT

SUPERIOR COURT

Devonwood Investors, LLC 75 Cherry Street

ENVIRONMENTAL DIVISION
Docket No. 39-4-17 Vtec

DECISION ON MOTIONS

This is an appeal from a March 17, 2017 decision by the City of Burlington Development Review Board to issue a mixed-use redevelopment permit to Devonwood Investors, LLC, for the construction of a project in Burlington.

On May 15, 2017, BTC Mall Associates, LLC and Devonwood Investors, LLC filed a motion to dismiss or clarify. Appellants[1] filed an opposition to the motion on May 17, 2017, and Devonwood filed a reply memorandum on June 1, 2017.

On May 19, 2017, Appellants filed their Cross-motion to Vacate Permit for Lack of Case and Controversy Subject Matter Jurisdiction. On June 2, 2017, Devonwood filed an opposition to this motion, and on June 3, 2017, Appellants filed a reply. On June 5, 2017, Devonwood filed a motion to file a sur-reply and a sur-reply, to which Appellants filed a reply also on June 5, 2017.

Devonwood's motion to dismiss or clarify, Appellants' motion to vacate, and Devonwood's motion to file a sur-reply are all now ripe for our review.

Devonwood is represented by Brian S. Dunkiel and Jonathan T. Rose, Esqs., and Appellants are represented by John L. Franco, Jr., Esq. The City of Burlington is represented by Kimberlee J. Sturtevant, Esq.[2]

---

[1] Appellants are Barbara McGrew, Hannah Babiss, Sandra Baird, Lionel Beasley, Jeremy W. Bond, Talia Bosley, Sara Brown, Montana Burns, Jared Carter, Amanda Coggeshall, Steve Coggeshall, Jack Daggitt, Kimberly Dean, Jasmine Dalton, Nancy W. Dinkel, Gregory H. Dinkel, Glenn Eames, Alex Epstein, Thomas Fitzgerald, Monique Ford, John L. Franco, Douglas French, Meriam French, Diane Gayer, Steven Goodkind, Alora Goodkind, Hogo Martinez Gazon, Gabrielle R. Hall, John Hanson, Stephen Hard, Colleen Hendeny, Nancy L. Kirby, Alex Laven, Larry Lewack, Geoffrey H. Leyden, Caryn Long, Michael Long, Jerome E. Mabb, Patrick Maurier, Lynn Martin, Sage Narbonne, Dan Nielsen, Barbara Nolfi, Shan Norten, Elizabeth Perry, Theresa Pilch, Anthony Reddington, Laurie E. Roberge, Gabriela Salazar, Andrew Simon, Charles R. Simpson, Jess Slayton, Ibnar A. Stratibus, Mary Twitchell, and Donna Walters.

[2] At the June 5, 2017 status conference in this matter, the City represented that its concerns are consistent with Applicant's positions within the pending motions.

1

**Background and Procedural History**

The following background and history is set out solely to provide context for this decision, and is not meant in any way to be a complete or final determination of the facts.

On December 15, 2016, Devonwood Investors, LLC, and PKSB Architects & PC Construction filed an application with the Burlington Development Review Board (DRB) requesting a permit for the mixed-use redevelopment of the existing Burlington Town Center Mall site. The site is owned by BTC Mall Associates, LLC. For purposes of clarity, we note that in this decision we refer to Devonwood Investors, LLC and BTC Mall Associates, LLC in their individual capacities, and refer to both entities collectively as "Devonwood."

The proposed project would replace the existing mall with a mixed-use, mixed-income housing project with 272 residential housing units, offices, retail, community space, and a parking garage (the Project). The DRB approved the application on March 17, 2017. A group of people (Appellants) appealed that decision to the Environmental Division on April 14, 2017.

An appeal from a DRB decision comes before us *de novo*. 10 V.S.A. § 8504(h); V.R.E.C.P. 5(g). As such, we do not review that decision, or affirm or reverse any of its conclusions. In re Highlands Development Co., LLC and JAM Golf, LLC, No. 194-10-03 Vtec, slip op. at 11 n.10 (Vt. Super. Ct. Envtl. Div. Sep. 21, 2010) (Wright, J.). Instead, we sit in the place of the DRB and consider the application anew. Id. This involves taking new evidence on the aspects of the permit application that are raised in the statement of questions. Id. Then, applying the same standards that the DRB applied in making its decision, we render an independent decision on the merits of those issues. Id. (citations omitted). This decision will ultimately determine whether the permit application should be approved or denied. The scope of our review, and our jurisdiction, is as broad as, but not broader than, that of the DRB. In re John A. Russell Corp., 2003 VT 93, ¶ 29, 176 Vt. 520 (citing In re Torres, 154 Vt. 233, 235 (1990)).

I.     **Devonwood's Motion to File a Sur-reply**

Devonwood moves for permission to file a sur-reply to respond to what it refers to as mischaracterizations in Appellants' June 3, 2017 reply filing. A party does not normally have a right to file a sur-reply. V.R.C.P. 78(b)(1). When new issues are raised in a response, however, the opposing party may be entitled to file a sur-reply. Champlain Parkway Wetland CU

2

<u>Determination</u>, No. 123-10-16 Vtec, slip op. at 3 (Vt. Super. Ct. Envtl. Div. Apr. 14, 2017) (Durkin, J.) (citations omitted).  Here, the alleged mischaracterizations are in a sense new issues, and we are therefore inclined to allow Devonwood to respond.  In addition, any potentially prejudicial effect of allowing the sur-reply is mitigated by the fact that Appellants filed a reply to the sur-reply.  The motion to file a sur-reply is therefore **GRANTED**, and we will consider the sur-reply, and the reply to the sur-reply, in rendering our decision.

## II.       Devonwood's Motion to Dismiss for Lack of Standing

Devonwood asserts in its motion to dismiss that 35 of the Appellants do not have standing to bring this appeal.  Because standing is an element of subject matter jurisdiction, we review a motion to dismiss for lack of standing pursuant to Rule 12(b)(1) of the Vermont Rules of Civil Procedure.   <u>Parker v. Town of Milton</u>, 169 Vt. 74, 76 (1998); V.R.C.P. 12(b)(1).  In considering a 12(b)(1) motion we accept "all uncontroverted factual allegations . . . as true and construe [them] in the light most favorable to the nonmoving party."   <u>Rheaume v. Pallito</u>, 2011 VT 72, ¶ 2, 190 Vt. 245 (citing <u>Jordan v. State Agency of Transp.</u>, 166 Vt. 509, 511 (1997)).[3]

Standing to appeal a municipal zoning decision to the Environmental Division is normally limited to those who qualify as interested persons under 24 V.S.A. § 4465, and who participated in the municipal proceeding below.  24 V.S.A. § 4471(a); 10 V.S.A. § 8504(b)(1).

Apart from one appellant—Barbara McGrew—Appellants claim standing pursuant to 24 V.S.A. § 4465(b)(4), which allows a group of ten or more voters or property owners to qualify as interested persons by filing a signed petition with the DRB.  We have held that the participation requirement is not met when a § 4465(b)(4) petition is filed after the close of evidence in the proceeding before the municipal panel.  <u>Zaremba Group CU – Jericho</u>, No. 101-7-13 Vtec, slip op. at 5–7 (Vt. Super. Ct. Envtl. Div. Apr. 21, 2014) (Walsh, J.).  In such a case, the would-be appellants do not have standing to appeal the municipal panel's decision.  <u>Id</u>.

---

[3] Although we follow the civil rule regarding motions to dismiss, practice in the Environmental Division differs from that in the Civil Division in that the appellant files a statement of questions instead of a complaint. Because there is no complaint before us, and because the statement of questions generally does not include factual allegations, we depart from the civil practice of focusing on factual allegations made in the *complaint*, and instead look to factually allegations as made more broadly. See, e.g., <u>R.L. Vallee, Inc., et al. MS4</u>, No. 122-10-16 Vtec, slip op at 1 n.2 (Vt. Super. Ct. Envtl. Div. May 2, 2017) (Walsh, J.).

Here, Devonwood asserts that one set of individuals among Appellants filed their petitions to participate after the DRB closed the evidence in the hearing below. However, Appellants assert that the DRB subsequently re-opened the evidence. Under the standard for 12(b)(1) review, we take Appellants' factual assertion as true, and assume for the purposes of this motion that Appellants filed to participate before the evidence was fully closed. The filing was therefore timely.

For this reason, Devonwood's motion to dismiss for lack of standing based on a failure to comply with the participation requirement set out in 24 V.S.A. § 4471(a) and 10 V.S.A. § 8504(b)(1) is **DENIED**.

**III.     Whether Devonwood Had Standing to Apply for the Permit**

Question 1 argues that a permit should not be issued to Devonwood Investors, LLC, because it is not the owner of the underlying property. Appellants frame this argument in "standing" terms, arguing that Devonwood Investors, LLC, does not have standing to apply for the permit. The parties agree in their pleadings that BTC Mall Associates, LLC, is the property owner and Devonwood Investors, LLC is the applicant. Because Devonwood investors, LLC, did not have standing to apply for the permit, Appellants argue, the DRB did not have subject matter jurisdiction to consider the application.

In their motion to vacate, Appellants ask us to vacate the DRB decision granting Devonwood a permit for the reasons set out in Question 1. As explained above, however, it is not our role in a *de novo* hearing to vacate the decision below. Because Appellants ask us to rule in their favor on subject matter jurisdiction and standing grounds—which would lead to a denial of the permit application—they are effectively asking us to render a judgment on the pleadings. We therefore take their motion as one for judgment on the pleadings filed pursuant to Civil Rule 12(c). See Reynolds v. Sullivan, 136 Vt. 1, 2 (1978). Although the motion does not specify which part of their Statement of Questions they want the Court to base this ruling on, it appears to rely on Question 1.

Devonwood, meanwhile, moves to dismiss Question 1 pursuant to Civil Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

Under both 12(b)(6) and 12(c), if "matters outside the pleadings are presented to and not excluded by the court," we must take the motion as one for summary judgment pursuant to Rule 56. Here, both parties have submitted additional materials with their pleadings, and refer to those materials in their motions related to Question 1. Because we are able to resolve this matter without relying on the supplementary materials, we exclude those materials from our consideration and consider only the pleadings. V.R.C.P. 12(b) and (c).

When presented with a Rule 12(c) motion for judgment on the pleadings, "all well pleaded factual allegations in the nonmovant's pleadings and all reasonable inferences that can be drawn therefrom are assumed to be true and all contravening assertions in the movant's pleadings are taken to be false." Hebert v. State, 165 Vt. 557, 557 (1996) (mem.) (quoting Bressler v. Keller, 139 Vt. 401, 403 (1981)). Likewise, when presented with a 12(b)(6) motion to dismiss we "take the factual allegations [made by the nonmoving party] as true, and consider whether 'it appears beyond doubt that there exist no facts or circumstances that would entitle the [nonmoving party] to relief.'" Colby v. Umbrella, Inc., 2008 VT 20, ¶ 5, 184 Vt. 1 (quoting Alger v. Dep't of Labor & Indus., 2006 VT 115, ¶ 12, 181 Vt. 309).[4]

A permit applicant need not own the land on which the proposed use takes place. Nothing in the state zoning law requires the applicant to also be the landowner. 24 V.S.A. §§ 4449–50. The statutes guiding appeals of permit decisions explicitly provide for a situation where the applicant is not the landowner by separately defining both the landowner, and a permit applicant who is not the landowner, as parties by right. 10 V.S.A. § 8502(5)(A) and (B). A similar provision is found in the Burlington zoning regulations. Burlington Comprehensive Development Ordinance § 3.2.4 ("All permit applications are required to be signed by the property owner and applicant if different than the property owner.").

We have also cited this principle in our decisions. See Clermont Terrace Site Plan and Zoning Permit Approvals, Nos. 46-2-05 Vtec and 72-4-05 Vtec, slip op. at 5–6 (Vt. Envtl. Ct. Mar. 22, 2006) (Durkin, J.) (explaining that "[a]pplications for municipal permits to develop property are often filed by individuals who do not hold record title to the subject property"); Diverging

---

[4] As noted above, we consider allegations made in the pleadings generally, rather than limiting ourselves to the complaint.

<u>Diamond Interchange Act 250 Permit</u>, No. 169-12-16 Vtec, slip op. at 2–3 (Vt. Super. Ct. Envtl. Div. Mar. 17, 2017) (Walsh, J.) (addressing status of non-applicant landowner).

The purpose of including a non-applicant landowner on an application is to "ensure that the landowner, who has a substantial interest in his or her property, supports the proposed use of the property." <u>In re Southern Vermont Beagle Club</u>, No. 142-9-11 Vtec, slip op. at 10 (Vt. Super. Ct. Envtl. Div. Jan. 17, 2013) (Walsh, J.). We do not take the identity of the landowner into account when reviewing a permit application unless the party appealing the application "can point to prejudice arising from an inaccuracy in the name of the landowner listed on [the] permit application." <u>Id</u>.

If we give all benefit and inferences to Appellants and take all of their assertions as true, and all of Devonwood's countervailing assertions as false, we would conclude that Devonwood, which does not own the property, applied for the permit, and that BTC, which does own the property, was not included in the permit application. No prejudice related to these factual assertions is alleged. Under the relevant statutes, case law, and zoning regulations, this is permissible, and is not grounds for denying the permit application. Question 1 therefore fails to state a claim upon which relief can be granted, and Devonwood's motion to dismiss is therefore **GRANTED**.

In the interest of completeness, we briefly address some of Appellants' additional arguments.

Appellants cite <u>Mad River Valley Enterprises, Inc. v. Town of Warren Bd. of Adjustment</u>, 146 Vt. 126 (1985) to support the proposition that Devonwood Investors, LLC lacks standing to apply for the permit. That case, however, addresses whether an applicant who is not a landowner has standing to appeal a zoning permit decision in superior court, not whether an applicant who is not a landowner has standing to apply for a zoning permit, as is the case here. <u>Id</u>. at 128. <u>Mad River</u> is therefore inapposite to the question before us.

Appellants also cite cases for the proposition that third parties do not have standing to assert the rights of others—so-called "third party" standing. <u>Baird v. City of Burlington</u>, 2016 VT 6, ¶ 15, 201 Vt. 112; <u>Bischoff v. Bletz</u>, 2008 VT 16, ¶ 16, 183 Vt. 235. Along the same lines, Appellants also cite cases for the principle that a court's jurisdiction is limited to "actual cases

and controversies." Parker, 169 Vt. at 76–77. These cases all address constitutional limitations that require a plaintiff to show injury in fact, causation, and redressability in order to have standing in court. Baird, 2016 VT 6, ¶ 13. Like Mad River, these cases have no bearing on whether Devonwood can file a permit application.

Appellants further suggest that allowing a non-landowner applicant to apply for a permit would somehow undermine the res judicata effect, or finality, of a permit application decision. We disagree, noting that 24 V.S.A. § 4472(d) protects final decisions on permit applications from collateral attacks, and that the successive application doctrine "provides that a local board 'may not entertain a second application concerning the same property after a previous application has been denied, unless a substantial change of conditions had occurred or other considerations materially affecting the merits of the request have intervened between the first and second application,'" In re Application of Lathrop Ltd. P'ship I, 2015 VT 49, ¶ 58, 199 Vt. 19 (quoting In re Carrier, 155 Vt. 152, 158 (1990)).

IV.     **Whether the Project Must Address Impact to Neighboring Properties, and Whether Neighboring Property Owners are Necessary Parties**

Regarding Question 1, Appellants further argue that Devonwood Investors, LLC, does not have standing to apply for a permit that will impact Macy's and 100 Bank Street, and suggest that the owners of Macy's and 100 Bank Street would at least have to be co-applicants to the permit. Questions 10 and 11 allege that the Project fails to address how it will impact the Macy's building, and argue that the owners of Macy's and 100 Bank Street are necessary co-applicants or necessary parties.

A party may be a necessary co-applicant where that party's involvement is required to enforce a permit. Hinesburg Hannaford CU Appeal, Nos. 129-9-12 Vtec et seq., slip op. at 5 (Vt. Super. Ct. Envtl. Div. Oct. 27, 2015) (Walsh, J.) (citations omitted). There is no suggestion that this is the case with Macy's or the owner of 100 Bank Street. We have also explained that where a project may involve multiple permits, we will not deny one permit on the premise that another permit may be needed in the future but has not yet been obtained. Id. at 3. Whether Macy's

7

may need a permit in the future is not presently before the Court, and we are therefore unable to consider that question. Torres, 154 Vt. at 235.[5]

Furthermore, Appellants do not have standing to represent, or raise, the interests of the owners of Macy's and 100 Bank Street. Hinesburg Sand & Gravel Co. v. State, 166 Vt. 337, 341 (1997) ("The prudential elements of standing include the general prohibition on a litigant's raising another person's legal rights").

Because we only have jurisdiction over the matter that is before us, and because the owners of Macy's and 100 Bank Street are not necessary parties or co-applicants, Questions 10 and 11, and this aspect of Question 1, are **DISMISSED**.

**V.    Whether Devonwood Investors, LLC and BTC Mall Associates, LLC, Lack Standing to Participate because They Are Not Interested Persons**

Appellants' Question 2 argues that Devonwood Investors, LLC lacks standing to participate in the matter now before the Court because it fails to qualify as an interested person under 24 V.S.A. § 4465(b), and BTC Mall Associates, LLC lacks standing to participate in the appeal because it did not participate in the DRB proceedings, as required by 10 V.S.A. § 8504(b).

While "standing" generally refers to whether a party has the right to appeal a permit application decision, "party status" is given to those who join an action initiated by another. Verizon Wireless Barton Act 250 Permit Telecommunications Facility, No. 6-1-09 Vtec, slip op. at 1 n.1 (Vt. Envtl. Ct. Feb. 2, 2010) (Durkin, J.). Neither Devonwood Investors, LLC, nor BTC Mall Associates, LLC, has attempted to appeal the permit, and so our analysis looks to whether they have party status.

The parties agree in their pleadings that BTC Mall Associates, LLC, is the property owner and Devonwood Investors, LLC is the applicant. BTC Mall Associates, LLC as the landowner, is a party by right. 10 V.S.A. § 8502(5)(A). Devonwood Investors, LLC, as the applicant, is also a party by right. 10 V.S.A. § 8502(5)(b). A party by right gains party status by filing an entry of appearance

---

[5] Under Act 250, a party may be a necessary co-applicant if it is the record owner of the land at issue, or if it has such a significant interest in the proposed use that the application cannot be accepted without their participation. Madowitz v. Woods at Killington Owners' Ass'n, 2010 VT 37, ¶ 7 n.3, 188 Vt. 197. Because this is not an Act 250 matter, these rules do not apply. Even if they did, however, the pleadings indicate that the owners of Macy's and 100 Bank Street do not own the property that is the subject of this appeal, and have no interest in the proposed use. See In re Pilgrim P'ship, 153 Vt. 594, 597 (1990).

after a notice of appeal is filed. V.R.E.C.P. 5(c) (stating that any person enumerated in 10 V.S.A. § 8504(n)(1)–(3) can enter an appearance); 10 V.S.A. § 8504(n)(2) (allowing a party by right to intervene in an appeal to the Environmental Division). On May 4, 2017, Attorneys Dunkiel and Rose entered their appearance on behalf of BTC Mall Associates, LLC, as a party by right as owner of the subject property, and Devonwood Investors, LLC, as a party by right.[6]

By following these procedures, BTC Mall Associates, LLC and Devonwood Investors, LLC, properly have party status in this proceeding. Because their status is proper, we conclude that challenges to their "standing" in Question 2 fails to state a claim upon which relief can be granted, and **GRANT** the motion to dismiss Question 2.

## VI.    Whether the Project Requires Subdivision Review

Question 3 alleges that "[t]he project is subject to, and failed to obtain, subdivision review or approval." In their May 17, 2017 filing, Appellants assert that the Project would create four new parcels out of the existing property. Devonwood responds that the Project does not create four new lots, but rather reconfigures the boundary lines of four existing lots.[7]

Taking the factual allegations by Appellants—that the Project would create four new parcels—as true, we are unable to conclude that there are no facts or circumstances that would entitle Appellants to relief on this question. Colby, 2008 VT 20, ¶ 5. Devonwood's motion to dismiss Question 3 is therefore **DENIED**.

## VII.    Whether the Relevant Zoning Amendments Were Properly Adopted

Question 4 charges that the Downtown Mixed Use Core (DMUC) Overlay zoning amendments were not lawfully adopted, and that the Project cannot be approved based on compliance with those amendments.

In their motion to stay, Appellants allege that the procedure to adopt the amendments failed to comply with 24 V.S.A. § 4441(c)–(e). From what the Court can determine, Appellants specifically argue that the adoption of the amendments violated the part of subsection (c) of this statute which states that "the planning commission shall prepare and approve a written report

---

[6] An earlier notice of appearance filed on April 21, 2017 did not include BTC Mall Associates, LLC.

[7] In support of this, Devonwood cites the DRB's conclusion that no subdivision review is needed. Because our review is *de novo*, we do not take this DRB conclusion into account.

on the proposal." 24 V.S.A. § 4441(c). Appellants also appear to suggest that the written report should be in some kind of final form.

Appellants allege that the Planning Commission failed to comply with this provision because planning and zoning staff prepared the report, instead of the Planning Commission preparing and approving the report.

Appellants cite a line of cases holding that municipalities must strictly—rather than substantially—comply with statutes setting out procedures for adopting zoning regulations. E.g. Kalakowski v. Town of Clarendon, 139 Vt. 519, 522 (1981); Town of Waterford v. Pike Industries, Inc., 135 Vt. 193, 195 (1977); Town of Milton v. LeClaire, 129 Vt. 495, 499 (1971); Corcoran v. Village of Bennington, 128 Vt. 482, 493 (1970). Devonwood, in response, cites a statute that requires substantial—rather than strict—compliance with statutory procedures for adopting zoning regulations. 24 V.S.A. § 4483(a). Because the statute cited by Devonwood was adopted more recently than the decisions cited by Appellants, 2003, Adj. Sess., No. 115, § 109, we follow the rule of substantial compliance set out in the statute. See Kuligoski v. Brattleboro Retreat, 2016 VT 54A, ¶ 71 (indicating that case law can be superseded by later-enacted statutes); State v. Barrows, 158 Vt. 445, 449 (1992) (a clear and unambiguous statute supersedes earlier common law).

Giving all benefit and inferences to Appellants and taking their factual assertions as true and all of Devonwood's countervailing assertions as false, we conclude that the issues raised by Appellants show substantial compliance with the statute in question.

First, § 4441(c) does not require a planning commission to formulate a final report. Second, planning commissions are authorized to retain staff and consultant assistance in carrying out their duties, which is what the Planning Commission did here regarding preparation of the report. 24 V.S.A. § 4325(11). Most importantly, there is no suggestion that the report itself was inadequate, that the failure of the Planning Commission members to personally prepare the report prejudiced any party or obstructed or hindered the process, or that the process as undertaken failed to effect the purposes of the statutory procedures.

10

We therefore **GRANT IN PART** Devonwood's motion to dismiss Question 4, insofar as that question alleges that the Planning Commission failed to comply with the specific statutory procedures described above.

**VIII.     Whether the Project Complies with Parking Requirements Set Out in Municipal Plans**

Question 5 alleges that the Project does not comply with "the review criteria for Major Impact Review Standards § 3.5.6(b) of the zoning ordinance," and Question 6 alleges that the Project does not comply with "the applicable bylaws or with the applicable city plans, including the Champlain Street Urban Renewal Plan."

Appellants state in their May 17, 2017 filing that their arguments as to why they believe the project fails to comply with CDO § 3.5.6(b) are set out in their earlier motion for stay and reply in support of that motion. The motion for stay argues that the Project's proposal to remove an existing parking garage and construct a new parking garage fails to comply with CDO §§ 3.5.6(b)(5), (7), (9), and (10), because the Project will increase parking needs while failing to proportionately increase the number of available parking spots. While CDO § 3.5.6(10) requires compliance with municipal plans, addressed below, the parties address compliance with CDO §§ 3.5.6(b)(5), (7), and (9) in only a very limited way, if at all.

The parties agree that the parking plan proposed by Devonwood complies with CDO § 8.1.8, which governs the number of parking spaces required for different land uses.

Appellants, however, allege in their motion to stay that the Project violates the Transportation Plan of the Burlington Municipal Development Plan, and they specifically cite the following excerpts:

> Parking is a critical resource for any community, especially in the downtown/core area. It is the means by which a driver is converted to a shopper, client, visitor, or just plain citizen. Provision of appropriate parking in terms of location, quantity, and accessibility is essential to the survival and prosperity of any community's downtown core, including Burlington.
>
> . . .
>
> It is the policy and priority of the City to better utilize the existing parking inventory by implementing improved parking management strategies, and to add additional inventory in strategic locations necessary and as new development

11

presents opportunities. Parking in the downtown core is currently inadequate and action should be taken to address this issue.

. . .

Some parking in the downtown is likely to be lost due to redevelopment. The City has a policy of no net loss, so these spaces will need to be replaced. Additional parking spaces in strategic locations—particularly in the Main Street corridor—also may be needed.

Opportunities for increasing parking supply include expanding the Marketplace garage into the Handy air rights and adding on-street parking spaces with conversion to one-way streets. Both of these ideas require additional study.

Transportation Plan at 4–5, 16 *available at* https://www.burlingtonvt.gov/sites/default/files/PZ/planBTV/MDP11_pdf/MDP14%20Complete.pdf.

A land use is only required to comply with a municipal plan insofar as that plan sets forth a specific policy that is set forward in clear, unambiguous language demonstrating that the specific policy is mandatory. Regan v. Pomerleau, 2014 VT 99, ¶ 16, 197 Vt. 449. A proposed use need not comply with a municipal plan's language that is aspirational, rather than mandatory. Id.

The municipal plan language cited by Appellants sets out that parking is important, and that sufficient parking is important, and that the number of parking spots cannot be decreased and may need to be increased. Because this language lacks specific standards and is aspirational, the Project need not comply with it.

The only part of these plans that could be considered mandatory is the "policy of no net loss," which requires that spaces lost to redevelopment be replaced. Appellants agree that the redeveloped Project's parking garage will have more parking spaces than the existing parking garage. They argue, however, that the Project does not comply with the no-net-loss policy because, although the gross number of parking spots will increase, there will be a net decrease of spots available to service retail space. This interpretation of the no-net-loss policy is not supported by the Transportation Plan or the zoning regulations.

First, we note that as far as the no-net-loss policy is vague or ambiguous, we interpret the policy in favor of the permit applicant. In re Champlain Oil Co. Conditional Use Application, 2014 VT 19, ¶ 2, 196 Vt. 29 (citing In re Toor, 2012 VT 63, ¶ 9, 192 Vt. 259).

12

Next, we give effect to the plain meaning of the words in land use regulations. In re Pierce Subdivision Application, 2008 VT 100, ¶ 8, 184 Vt. 365. The Transportation Plan states that there is a "policy of no net loss," and that "parking [spaces] in the downtown . . . lost due to redevelopment . . . will need to be replaced." The plain-language interpretation of this policy is that every parking space lost to redevelopment will need to be replaced by one new parking space.

In addition, while the Transportation Plan indicates that parking is important for shoppers, it says nothing to support Appellants' suggestion that the no-net-loss policy requires a proposed use to calculate parking for retail space specifically, and then to ensure that there is no net loss of retail parking. In this sense, then, the Transportation Plan provides only general guidance.

Finally, for more specific guidance we can turn to the zoning regulations, which "are the specific implementation of" the municipal plan. In re Molgano, 163 Vt. 25, 30 (1994); 24 V.S.A. § 4401. While town plans are often advisory, and therefore not enforceable, zoning ordinances are "specific and regulatory," and are therefore legally enforceable. In re Moody Subdivision Appeal, No. 2015-341, slip op at *2 (Vt. Feb. 11, 2016) (quoting Kalakowski v. John A. Russell Corp., 137 Vt. 219, 225 (1979)). Here, the zoning regulations set out minimum requirements for off street parking at CDO § 8.1.8. Because the purpose of zoning regulations is to implement municipal plans, we assume that these regulations are designed to more specifically implement the policies set out in the Municipal Plan and the Transportation Plan. The parties agree that the Project complies with the parking requirements set out in CDO § 8.1.8. If the Project complies with the specific parking requirements in the zoning regulations that implement the municipal plan, we can infer that the Project also complies with parking requirements in the municipal plan.

For these reasons we **GRANT IN PART** the motion to dismiss Question 6 to the extent that it alleges that the Project fails to comply with the sections of the Transportation Plan that deal with parking, cited above; and **GRANT IN PART** the motion to dismiss Question 5 insofar as CDO § 3.5.6(10) requires compliance with the Transportation Plan.

**IX.    Whether the Court Can or Should Consider Impact on Neighboring Properties' Permits**

Question 7 alleges that the demolition of the existing parking garage will result in a violation of permits issued to other properties in the area that were issued in part because the garage provided them with parking.  We conclude that we do not have jurisdiction over this question.

We only have jurisdiction over the permit that is appealed to us; we are not able, in an appeal from one permit decision, to adjudicate other permits that have not been appealed.  See In re RACDC Retention Pond, No. 62-5-12 Vtec, slip op. at 3–4 (Vt. Super. Ct. Envtl. Div. Jan. 29, 2013) (Walsh, J.).  We therefore have no jurisdiction in this matter to consider whether the owners of Macy's or 100 Bank Street need to obtain a new permit or modify an existing permit in relation to our decision regarding the pending permit application.  Even if a new permit or modification would be needed, we will not deny a permit application simply because other permits may also be required in relation to the proposed use.  Hinesburg Hannaford, Nos. 129-9-12 Vtec et seq., slip op. at 3 (Oct. 27, 2015).

In addition, Appellants must have some personalized interest in the permitted use that will allegedly become noncompliant if this Project is approved in order to have standing to raise this question.  Hinesburg Sand & Gravel, 166 Vt. at 341 (1997).  Appellants do not claim any such interest.

Even if we had jurisdiction to consider permits held by others, and even if Appellants had standing to raise this question, "[r]equiring [Devonwood] to amend permits held by others would accomplish nothing more than to impose potentially unrelated permit conditions upon [Devonwood] and to place it and the operation of [the Project] at the mercy of the behavior of others over whom it has no control."  In re CVPS/Verizon Act 250 Land Use Permit Numbers 7C1252 & 7C0677-2, 2009 VT 71, ¶ 25, 186 Vt. 289.  Such an outcome would be irrational, would lead to highly problematic or untenable outcomes, and would be contrary to the intentions of Vermont's municipal planning and development statutes.  See Id. ¶¶ 22–25.

For these reasons, Devonwood's motion to dismiss Question 7 is **GRANTED**.

14

**X.     Whether the Project Will Adversely Impact the Scenic or Natural Beauty of the Area**

Question 8 asserts that the Project does not comply with the Major Impact Review Criterion of the CDO:

> because it will have an undue adverse effect on the scenic or natural beauty of the area including by being out of character with the scale of the surrounding area, by blocking scenic views, and creating unacceptable shadow impacts on the portion [of the] Church Street Historic District located on the south side of Bank Street and on other properties located nearby.

When discussing this question in their filings, Appellants refer specifically to sub-part (8) of the major impact review standards, under which a proposed use may "[n]ot have an undue adverse effect . . . on the scenic or natural beauty of the area or any part of the city." CDO § 3.5.6(b)(8).

The DMUC District allows buildings up to 14 stories, or 160 feet tall. CDO § 4.5.8, Table 4.5.8-1. Devonwood notes that these height specifications are more specific than the major impact review standards set out in CDO § 3.5.6. To the extent that Question 8 addresses impacts associated with the height of the proposed Project, Devonwood argues that adherence to the specific height provisions in CDO § 4.5.8 prevails over any requirement to comply with more general aesthetic provisions of CDO § 3.5.6(8). See In re Application of Lathrop Ltd. P'ship I, 2015 VT 49, ¶ 31, 199 Vt. 19. The rule cited by Devonwood, however, is not precisely on point. The rule states that where two provisions within a zoning regulation conflict, the more specific regulation prevails. Id. Here, the provisions do not conflict; both can apply to the Project. Thus, while the Project may comply with dimensional requirements set out in CDO § 4.5.8, it still must also comply with CDO § 3.5.6(8).

We apply the so-called Quechee test to determine whether a proposed use will cause an undue adverse impact. Harrison CU Application and SP Approval, Nos. 49-5-16 Vtec and 95-8-16 Vtec, slip op. at 12 (Vt. Super. Ct. Envtl. Div. June 16, 2017) (Walsh, J.) (citing In re Grp. Five Invs. CU Permit, 2014 VT 14, ¶¶ 12, 14, 195 Vt. 625). The first step of this test is to determine if the proposed use will have an adverse effect. Id. (citing In re Times & Seasons, LLC, 2008 VT 7, ¶ 8, 183 Vt. 336). If we answer this first part affirmatively, we then consider whether the adverse effect would be undue. Id.

15

Regarding the first prong of the <u>Quechee</u> test, an impact is adverse if it is not "in harmony with its surroundings," or fails to "fit the context within which it will be located." <u>In re Quechee Lakes Corp.</u>, Nos. 3W0411-EB and 3W0439-EB, Findings of Fact, Conclusions of Law, and Order, at 18 (Vt. Envtl. Bd. Nov 4, 1985). In order to determine whether a proposed project is in harmony with its surroundings, we look to the "project's design . . . scale, materials, and form relative to existing buildings in the immediate area," and consider the character of "existing buildings, nearby developments, and roadways." <u>Zaremba Group CU – Jericho</u>, No. 101-7-13 Vtec, slip op. at 12 (Vt. Super. Ct. Envtl. Div. Nov. 7, 2014) (Walsh, J.).

At this time, the parties have presented insufficient information in the pleadings for the Court to understand what scenic views are at issue, whether the views are protected, and how they would be impacted; and what the shadow impact would be. Because of this lack of information, the motion to dismiss is **DENIED**.

### XI. Whether the Court Can Consider a Predevelopment Agreement with the City

Question 12 alleges that the Project fails to indicate whether the scope of work includes all of the public improvements identified in a predevelopment agreement with the city and in language used in relation to a tax increment financing referendum.

As explained above, the matter on appeal is whether a permit application presented to the DRB should be approved or denied. We have no jurisdiction over agreements between the property owner and the city or over a referendum. For this reason, Question 12 is **DISMISSED**.

### XII. Remaining Questions to Be Clarified

Apart from compliance with 24 V.S.A. § 4441(c)–(e), we are unable to dismiss Question 4 in its entirety because it sets out a very general allegation that the DMUC amendments were improperly adopted.[8]

Likewise, we are unable to dismiss Questions 5 and 6 in their entirety, aside from whether the Project complies with parking requirements set out in the Transportation Plan, because those questions are also extremely broad. Question 5 alleges failure to comply with Major Impact

---

[8] The vague nature of the question is emphasized in Appellants' May 17, 2017 pleading, which states that there may be other grounds that Appellants have not raised on which to conclude the amendments were not lawfully adopted.

Standards set out in CDO § 3.5.6(b); however, this section includes a dozen standards, and it is unclear which of these Appellants believe the Project violates, or how. Question 6 is even broader, alleging the Project fails to comply with "the applicable bylaws or with applicable city plans, including the Champlain Street Urban Renewal Plan." It is not clear what bylaws the Project allegedly fails to comply with, and why; what city plans other than the Champlain Street Urban Renewal Plan the Project allegedly fails to comply with, and why; and what part of the Champlain Street Urban Renewal Plan the Project allegedly fails to comply with, and why.

Question 9 alleges that an exterior wall or walls of the Project will not "sufficiently activate the street or integrate it with the streetscape, and is aesthetically inappropriate (ugly) consisting mostly of a wall." Again, it is not clear what part of the zoning regulations, or other legal authority, is at issue. Likewise, Question 8 asserting that the Project does not comply with the Major Impact Review Criterion of the CDO is very broad and requires specificity.

"We generally require that a Statement of Questions not be overly vague." In re J.R. Vinagro Corp. Waste Transportation Permit, No. 76-6-13 Vtec, slip op. at 1 (Vt. Super. Ct. Envtl. Div. Sep. 13, 2013) (Walsh, J.) (citations omitted). Instead, the statement of questions should be specific enough to "put the other parties on notice of the specific reasons for the challenge," thereby "enabl[ing] the parties and the court to focus on the issues in controversy." Id. In addition, our court rules allow us to order a party to clarify any overly vague questions. V.R.E.C.P. 5(f) and 2(d)(2); In re Atwood Planned Unit Dev., 2017 VT 16, ¶ 13.

These questions are so vague or broad that they fail to put the Court or Devonwood on notice of why Appellants believe the Project should not or cannot be approved. Appellants are therefore ordered to clarify any remaining parts of Questions 4, 5, and 6, and the entirety of Questions 8 and 9. The clarified questions must state which specific provisions of the zoning regulations, municipal plan, or statute the Project fails to comply with.

In ordering Appellants to clarify these questions, we note that we are not limiting the scope of questions that they may ask. In their clarification they may, for example, ask whether the Project complies with each sub-part of CDO § 3.5.6(b). In that case, they would need to spell that out and indicate what aspect of the Project might not comply with each sub-part.

17

**ORDER**

1. Devonwood's motion to file a sur-reply is **GRANTED**.

2. Appellants' motion to vacate is **DENIED**.

3. Devonwood's motion to dismiss is **GRANTED** as to Questions 1, 2, 7, 10, 11, and 12, and these questions are **DISMISSED**.

4. Devonwood's motion to dismiss is **DENIED** as to Questions 3 and 8.

5. Devonwood's motion to dismiss is **GRANTED IN PART** regarding the part of Question 4 that asks whether the Project complies with 24 V.S.A. § 4441(c)–(e), and **GRANTED IN PART** regarding the part of Questions 5 and 6 that asks whether the Project complies with parking requirements set out in the Municipal Plan and Transportation Plan.

6. Appellants must **CLARIFY** any remaining part of Questions 4, 5, and 6, and must also **CLARIFY** Questions 8 and 9.   Pursuant to the Scheduling Order in this matter, written discovery should be complete around July 19.   Appellants must file clarified questions on or before August 11, 2017.

Electronically signed on June 22, 2017 at 04:13 PM pursuant to V.R.E.F. 7(d).

_____
Thomas G. Walsh, Judge
Superior Court, Environmental Division