ON MOTION FOR REHEARING

RAMIREZ, J.
We grant Joya Industries, Inc.’s and Alvaro Mantilla’s petition for rehearing and withdraw the opinion filed December 13, 2000.
This is an appeal from an order which struck, for lack of standing, the claims to seized currency made by Joya Industries and Mantilla. The trial court entered the order at a court appearance scheduled to be an evidentiary hearing on standing, but at which the trial court permitted no testimony. We therefore reverse.[1]
*541 On December 3, 1999, members of the Hollywood Police Department and the South Broward Drug Task Force were conducting a money laundering surveillance in the area surrounding the Miami International Airport. They observed an individual later identified as Alvaro LaV-erde carry a large shopping bag into the premises of an import/export business, Joya Industries. A short time later, the officers observed the individual as he exited with the bag folded under his arm. The officers then stopped LaVerde’s vehicle, conducted a consensual search of the vehicle, and found a box containing $19,200 in bundled currency.
The officers then went to the Joya Industries premises and spoke with Yamile Medina, the owner’s daughter.[2] She signed a form consenting to a search of the premises. The search, aided by drug-sniffing dogs, disclosed approximately $20,000 in bundled currency in a plastic bag under the liner of a garbage can near the owner’s office and another $5,500 in currency in the drawer of the owner’s desk.[3] After the currency was found, Medina purportedly stated that she had given $25,000 of the currency delivered by LaVerde to Faros International, Inc., a freight forwarding company with offices adjoining Joya Industries. Medina also signed a blank waiver form, allegedly relinquishing any claim to the money seized.[4]
The officers then proceeded to the Faros office next door, where Aida Hernandez, the owner of the company, consented to a search of Faros’ offices. The police dog alerted on two boxes containing bundled currency totaling approximately $75,000, representing the $25,000 referred to by Medina, and $50,000 which had been delivered for Mantilla the day before. Hernandez also signed a waiver of rights form.
After the seizure of the currency and institution of forfeiture proceedings, Mantilla, a Colombian national, and Joya Industries filed claims to the money and requested an adversarial probable cause hearing. Joya Industries’ claim indicated that it was the owner of $30,500 of the seized money and Mantilla’s claim indicated that he owned $74,980 of the money.
Mantilla is an importer and exporter of personal hygiene products and food stuffs who maintains a warehouse and retail store on San Andres Island. He was using Joya Industries as one of his suppliers and Faros as one of his freight forwarders. He was indebted to his suppliers in the amount of approximately $76,000 and to Joya for $25,000.[5] One of Mantilla’s customers, Luis Segura, was indebted to Mantilla in the amount of $140,000.[6] The money delivered by LaVerde to Joya Industries came in part from Segura as a partial payment of his debt to Mantilla. *542 Two deliveries had been made, one on December 2nd and another on December 3rd. Ms. Medina and her warehouse manager were still counting the money from the second delivery when they saw a group of men dressed in shorts and tennis shoes approach their establishment. Before realizing the men were police officers, Ms. Medina and the manager hid the money as a precaution.
After two hearings and extensive discovery, the trial court found that Mantilla did not have standing because he did not possess the money at the time of seizure, he did not deliver the money, and implicitly found that the rest of the story he presented to support his claim of ownership was implausible. The court thus, in effect, granted summary judgment on the issue of standing without the City of Hollywood ever requesting such action. The court also ruled that Medina’s purported waiver of rights to the money seized from Joya Industries operated to waive the corporation’s claim.
If the trial court had made its finding after an evidentiary hearing, the standard of review would be abuse of discretion, i.e., the trial court’s ruling would be upheld unless no reasonable trial judge would have so ruled. See In re Forfeiture of 1981 Oldsmobile, VIN No. 1G3AZ57N2BE32296, 593 So.2d 1087, 1089 (Fla. 1st DCA 1992). However, as the trial court in effect granted summary judgment, the standard of review is de novo and requires that the evidence be viewed in the light most favorable to the non-moving party. Sierra v. Shevin, 767 So.2d 524, 525 (Fla. 3d DCA 2000); Edwards v. Norman, 780 So.2d 162, 163 (Fla. 2d DCA 2001).
In Munoz v. City of Coral Gables, 695 So.2d 1283, 1288 (Fla. 3d DCA 1997), we stated that “a claimant to seized currency must come forward with sworn proof of a possessory and/or ownership interest in the same to acquire standing to contest the forfeiture proceeding.” Several cases have subsequently examined the issue of standing where the claimant initially signed a sworn statement relinquishing all rights, title, and interest in the property. See Salazar v. Forfeiture of $182,289, 728 So.2d 276, 277 (Fla. 3d DCA 1999), (holding that the claimant could not merely state that it was his money in order to establish standing because such a conclu-sory statement did not overcome the legal effect of his prior relinquishment of rights); Arango v. Forfeiture of $477,890, 731 So.2d 847-48 (Fla. 3d DCA 1999) (observing that the subsequent statement was more detailed than that made in Salazar, but still holding that it was insufficient to overcome the legal effect of Arango’s relinquishment of rights to the currency. This Court found “Arango’s subsequent claim that he earned the $477,890 by selling cars, automotive parts, and heavy machinery, totally incredible, especially following his statements during the seizure to the police that the money represented the proceeds of a Colombian narcotics operation.”); Piqueras v. State, 770 So.2d 229, 230-31 (Fla. 3d DCA 2000) (affirming a finding of no standing of a forfeiture claimant who filed an affidavit asserting that she had earned the $140,000 in seized currency in Colombia, but on the day of the seizure she had voluntarily signed a statement to the contrary). In the instant case, Joya Industries has raised the issue that the execution of a blank form by Ms. Medina was only intended to waive any individual claim to the money, but was not meant to relinquish the rights of the corporation. This issue cannot be summarily decided. Furthermore, Mantilla never executed any waiver to the funds.
In Vasquez v. State, 777 So.2d 1200, 1202 (Fla. 3d DCA 2001), we attempted to *543 explain what constitutes the “sworn proof’ envisioned in Munoz, by stating that “a claimant should not have to prove his or her case to establish standing.” We reversed the summary denial of standing in the absence of an evidentiary hearing. In this case, we have a great deal more than the mere assertion that “the money is mine.” We have affidavits, answers to interrogatories and depositions of the claimants not only swearing to their ownership, but attempting to corroborate their version of the facts through telephone logs, invoices and other documentation.
We thus reverse the. summary denial of Joya Industries’ and Mantilla’s claims due to lack of standing and remand for an evidentiary hearing. See Vasquez, 111 So.2d at 1203 (“if the trial court is confronted with conflicting evidence and no waiver of rights by the claimant, as in this case, only an evidentiary hearing can resolve the standing issue.”).
Reversed and remanded.
SHEVIN, J., concurs in result only.

. The facts are mostly disputed. Although the City of Hollywood asserted at several places in its brief that the trial court had conducted an evidentiary hearing, a careful review of the record presented on appeal does not reveal any such hearing. The transcript of the hearing conducted on January 20, 2000 reveals that the trial court made a finding of no standing after counsel had made their opening statements. At the other hearing on the *541 City of Hollywood's motion to strike held on June 7, 2000, the trial court simply entertained argument of counsel. We relied on the representation that an evidentiary hearing had been held when we initially affirmed the court's ruling and deferred to the trial court's superior vantage point in evaluating credibility. As no evidentiary hearing took place, a different standard of review is applicable.

. She was listed as vice president of Joya Industries with the Secretary of State.

. The amount seized is controverted by Joya Industries and Mantilla.

. Joya Industries and Mantilla contend that Medina waived any individual rights to the money, but did not intend to waive the corporation’s rights.

. Joya Industries and Mantilla proffered to the trial court documentation to corroborate these debts, but this was never presented because the hearing was concluded before the court received any testimony.

. Again, documentation was proffered to the trial court as corroboration.