NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@state.vt.us or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2016 VT 6

No. 2014-460

| | |
|---|---|
| Sandra Baird and Jared Carter | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Chittenden Unit, |
| | Civil Division |
| | |
| City of Burlington | May Term, 2015 |

Dennis R. Pearson, J.

John L. Franco, Jr., Burlington, for Plaintiffs-Appellants.

Gregg Meyer and Eileen Blackwood, Burlington City Attorney's Office, for
  Defendant-Appellee.

PRESENT: Reiber, C.J., Dooley, Skoglund, Robinson and Eaton, JJ.

¶ 1. **REIBER, C.J.** Appellants Sandra Baird and Jared Carter appeal a final judgment by the Vermont Superior Court, Chittenden Unit, Civil Division, granting appellee City of Burlington's (the City) motion to dismiss for lack of standing and subject matter jurisdiction. We affirm.

¶ 2. This case concerns appellants' standing to challenge the City's recently adopted "Church Street Marketplace District trespass authority" ordinance (trespass ordinance). City of Burlington, Code of Ordinances, § 21-49 (2015), http://www.codepublishing.com/VT/Burlington [hereinafter Burlington Ordinances]. The trespass ordinance prohibits four activities within the Church Street Marketplace District (Marketplace District) and further provides for a new means

to enforce this prohibition: a notice of trespass.[1]  The Marketplace District is a quasi-public entity organized in 1979 pursuant to the Burlington city charter.  It includes member businesses that pay for membership through extra tax assessments and/or membership payments and it is overseen by a Marketplace Commission, a private organization consisting of nine members with an Executive Director.

¶ 3.    The Marketplace District exists to maintain and promote Church Street and the area around it as a vibrant commercial hub in downtown Burlington.  The Marketplace District's geographic area encompasses Church Street from Pearl Street on the north to Main Street on the south and includes segments of three intersecting streets—Cherry, Bank, and College—where buildings have frontage both on Church Street and on one of the intersecting streets.  Church Street is a brick-paved public street that is generally closed to automobile traffic.

¶ 4.    Filled with restaurants and shops, the Marketplace District has become a hot spot for social gatherings, street performers, protests, speeches, and marches, many of which are impromptu in nature.  Despite having the character of an outdoor pedestrian mall, Church Street is nevertheless a public right-of-way and is accessible to the public twenty-four hours a day.  Thus, all state criminal statutes, rules of criminal procedure, and city ordinances apply within the Marketplace District.  The Burlington Police Department (BPD) is responsible for policing the Marketplace District and maintains a regular presence in the area.

---

[1]  The trespass ordinance refers to this notice as a "no trespass order" or "order of no trespass."  However, these terms are misnomers because this notice is not technically an order. Rather, it informs the recipient that a subsequent violation may be a basis for criminal prosecution.  See 13 V.S.A. § 3705(a)(1) (detailing that it is unlawful to enter or remain on property, without legal authority or consent of person in lawful possession, where person has notice against trespass issued by actual communication by lawful possessor, agent, or law enforcement officer acting on possessor's behalf); see also Maarawi v. Parenteau, 2001 WL 36140136, at *1, (Vt. Dec. 1, 2001) (unpublished mem.), https://www.vermontjudiciary.org/UPEO2001-2005/eo01230.aspx ("The notice against trespass at issue in this case has no legal significance beyond acting as a necessary predicate to a criminal prosecution for trespass.")

¶ 5. The trespass ordinance was initially proposed in 2012 and adopted by the City Council on February 11, 2013. It became effective on March 3, 2013. The trial court observed that the City Council adopted the trespass ordinance in part to respond to a perceived increase in the number of "homeless or itinerant persons" in the Church Street marketplace, some of whom exhibit co-occurring mental health and substance abuse issues and engage in the behaviors that the trespass ordinance targets. In adopting the trespass ordinance, the City Council included "findings" that were informed by input from the BPD and the Marketplace Commission about "conditions the [BPD] and [Marketplace Commission] . . . identified and confront[ed] in the [Marketplace District] on a regular basis." Burlington Ordinances, § 21-49(a). The "findings" in the ordinance include a statement that "[c]ompliance with behavior laws within the . . . Marketplace District will be enhanced by the immediate administrative sanction of removing offenders from the . . . Marketplace District in addition to issuing tickets to them." Burlington Ordinances § 21-49(b)(4) (emphasis added).

¶ 6. The trespass ordinance allows BPD officers to issue a notice of trespass to anyone who is ticketed for one of four underlying violations: (1) "disorderly conduct"; (2) "unlawful mischief"; (3) "[p]ossession of an open or opened intoxicating liquor"; or (4) "[p]ossession of a regulated drug." Burlington Ordinances § 21-49(c)(1)-(4). The first two of these underlying violations expressly refer to municipal violations that are modeled on state criminal statutes. Compare Burlington Ordinances §§ 21-46, 21-47 (defining and prohibiting "disorderly conduct" and "unlawful mischief" respectively) with 13 V.S.A. §§ 1026, 3701 (same). The third violation is substantially the same as another municipal violation. Compare Burlington Ordinances § 21-49(c)(3) with § 21-38 (defining and prohibiting possession of an open alcohol container in

3

public).[2] The fourth underlying violation involves a state criminal offense. See 18 V.S.A. § 4201(29) (defining "regulated drug"); 18 V.S.A. § 4205 (criminalizing unauthorized possession of drugs listed in 18 V.S.A. § 4201(29)). The trespass ordinance permits the issuing officer to summarily and immediately exclude the recipient of the ticket from the Marketplace District.

¶ 7. Upon receiving his or her first notice of trespass, the offender will not be permitted within the Marketplace District for the balance of that day. Burlington Ordinances § 21-49(d)(1). For a second offense, that person may be expelled for up to ninety days, and upon a third citation, up to one year. Id. §§ 21-49(d)(2), (3). Once issued, the notice of trespass extends to the whole of the Marketplace District. Id. § 21-49(d). Any person given a notice of trespass can appeal the decision in writing within thirty days to the Marketplace Commission. Id. § 21-49(d)(4). Persons cited with a notice of trespass may also apply for a waiver to access Church Street for "work, residence, access to government services, [and/or] the exercise of constitutionally protected activities." Id. § 21-49(d)(4)(b).

¶ 8. Appellants Sandra Baird, a social activist and adjunct college professor, and Jared Carter, an adjunct law professor, are Burlington residents and licensed Vermont attorneys. Both appellants pay real property taxes to the City as well as municipal sales tax on purchases in the city. Appellants also frequent Church Street and have been opposed to the trespass ordinance since its inception. Although appellant Carter has alleged that he was threatened with

---

[2] The trespass ordinance references 23 V.S.A. § 1200(4) to define "intoxicating liquor" but does not expressly cross-reference Burlington Ordinance § 21-38. We note that Vermont's statutes do not prohibit the possession of an open container of alcohol in a public place by a pedestrian. See 7 V.S.A. §§ 61-69 ("Prohibited Acts"); 13 V.S.A. § 1029(a) (prohibiting political subdivisions from including "being found in an intoxicated condition as one of the elements of [an] offense"); but see 23 V.S.A. § 1134 (prohibiting possession of open alcoholic beverage container in passenger area of motor vehicle).

4

enforcement of the trespass ordinance on one occasion, neither appellant has in fact received a Marketplace District notice of trespass.

¶ 9. On August 14, 2013, appellant Baird filed a complaint against the City for declaratory and injunctive relief, which appellant Carter later joined, claiming that the trespass ordinance was both unconstitutional and ultra vires. In response, the City filed a motion to dismiss for lack of standing, citing that neither Baird nor Carter had been directly injured by the ordinance. After a one-day hearing, the trial court granted the City's motion to dismiss based on lack of standing and subject matter jurisdiction. The trial court held that the appellants had not suffered any "real adverse injury" and so did not have proper standing to bring this case. Ms. Baird and Mr. Carter appealed this dismissal for lack of standing.

¶ 10. On appeal, appellants make four arguments with regard to standing. First, they argue that their expressive interests in reaching their target audience were being restricted by the trespass ordinance. Next, they argue there was a credible threat of enforcement of the ordinance against appellant Carter, providing him with standing. They further argue that because the ordinance is overbroad on its face, they have standing to challenge it under the "overbreadth doctrine." Finally, appellants argue for standing under a "derivative taxpayer" theory. We conclude that appellants lack standing, so we do not reach the merits of their arguments that the trespass ordinance is unconstitutional and ultra vires.

¶ 11. Because of the unusual procedure the trial court used to make its findings concerning standing, the standard of review we apply in this case requires a thorough explanation. We generally review de novo a dismissal for lack of standing, "the same [standard of review] as that for lack of subject matter jurisdiction." Brod v. Agency of Nat. Res., 2007 VT 87, ¶ 2, 182 Vt. 234, 936 A.2d 1286. Issues of standing are normally resolved at trial, but to avoid an unnecessary trial, courts may require plaintiffs to prove facts essential to support

standing at a preliminary hearing. See Doherty v. Rutgers Sch. of Law-Newark, 651 F.2d 893, 898 n.6 (3d Cir. 1981) ("[T]o avoid an unnecessary trial, the district court may conduct a preliminary evidentiary hearing on standing."); N.A.A.C.P., Boston Chapter v. Harris, 607 F.2d 514, 526 n.15 (1st Cir. 1979) ("To avoid an unnecessary trial, the district court may conduct a preliminary evidentiary hearing on standing or other issues of justiciability."). In such cases, even though the trial court makes findings of fact in such hearings, appellate courts generally do not change their standard of review. Because standing is a question of law, they apply a de novo standard and view the evidence in the light most favorable to the non-moving party. In such cases, the appellate court often refers to the trial court's decision as a form of summary judgment.[3]

¶ 12.    The circumstances in the instant case are slightly different, both at the trial court level and at the appellate level. Although the issue of standing was initially raised through a motion to dismiss, this motion was effectively turned into an evidentiary hearing on standing by consent. The trial court held a preliminary "merits hearing" to allow "[p]laintiffs the opportunity to present their evidence so that more context and background could be made a matter of record, and the court . . . might have a better understanding of the ordinance and its implementation and enforcement in order to gauge whether Plaintiffs did (or did not) have a real and cognizable interest at stake in this case." The court not only made factual findings but also made conclusions of law. But unlike the typical case in which the court holds a preliminary

---

[3]    Joya Indus. v. City of Hollywood illustrates this point. 789 So.2d 539, 540 (Fla. Dist. Ct. App. 2001). To assess whether a corporation that filed a claim to money seized in a laundering operation had standing, the trial court held two hearings and found that the defendant did not have standing. On appeal, the court found that this finding was equivalent to granting summary judgment on the issue of standing without the appellee ever requesting such action. It therefore found that the appropriate standard of review was de novo and that the evidence must be viewed in the light most favorable to the non-moving party. Id. at 542 ("[A]s the trial court in effect granted summary judgment, the standard of review is de novo and requires that the evidence be viewed in the light most favorable to the non-moving party.").

evidentiary hearing on standing, the trial court resolved all relevant factual issues regarding standing, and the record regarding standing is effectively complete. On appeal, we therefore review the findings of fact under a "clearly erroneous" standard and we review the conclusions of law under a de novo standard. In doing so, we draw from federal precedent regarding similar unusual circumstances. See Munoz-Mendoza v. Pierce, 711 F.2d 421, 426 (1st Cir. 1983) (rejecting parties' reference to trial court decision on standing as "summary judgment" and instead accepting findings of fact unless clearly erroneous because factual inquiry was complete).

¶ 13. Vermont has adopted the federal standing requirements under Article III of the United States Constitution, which limits a court's jurisdiction to "actual cases or controversies." Parker v. Town of Milton, 169 Vt. 74, 76-77, 726 A.2d 477, 480 (1998). Therefore, to bring a case, "a plaintiff must, at a minimum, show (1) injury in fact, (2) causation, and (3) redressability." Id. at 77, 726 A.2d at 480 (citation omitted). A plaintiff who shows no particular injury that is attributable to the defendant has no standing to bring a suit. U.S. Bank Nat. Ass'n v. Kimball, 2011 VT 81, ¶ 12, 190 Vt. 210, 27 A.3d 1087. The standing requirement "promote[s] judicial restraint by limiting the occasions for judicial intervention into the political process," and therefore respects the fundamental separation of powers of the three branches of the government. Hinesburg Sand & Gravel Co. v. State, 166 Vt. 337, 340-41, 693 A.2d 1045, 1047-48 (1997).

¶ 14. Ms. Baird has never been "targeted, cited, or prosecuted under the ordinance." Nevertheless, she claims that her expressive interests were restricted because some people who had been given a notice of trespass could not attend a rally she held on Church Street to oppose the ordinance. Appellants cite the United States Supreme Court's recent decision, McCullen v. Coakley, ___U.S.___, 134 S. Ct. 2518 (2014), as evidence that Ms. Baird has standing to

challenge the ordinance. McCullen dealt with a Massachusetts statute that made it a crime to knowingly stand within thirty-five feet of an entrance or driveway to a reproductive health care facility. Id. at 2525. The court ruled that the law expressly "restricts access to traditional public fora and is therefore subject to First Amendment scrutiny." Id. at 2529. Under this framework, the McCullen plaintiffs had standing to challenge the statute because the blanket-restriction on access curtailed their efforts to communicate with patients seeking medical care at the facilities covered by the statute. Id. at 2527-29. Although Church Street is a traditional public forum, neither of appellant's rights to access the Marketplace District has been adversely affected by the trespass ordinance. They therefore do not have standing under McCullen. Where individuals received no-trespass orders and were prevented from attending a speech by Ms. Baird on Church Street, it would be for those individuals to seek relief, not Ms. Baird.

¶ 15. Appellants' argument is therefore similar to those in cases where plaintiffs have unsuccessfully attempted to assert third-party standing on behalf of others. See Bischoff v. Bletz, 2008 VT 16, ¶ 16, 183 Vt. 235, 949 A.2d 420 (finding that plaintiffs' contract with defendants did not give them standing to challenge third party's contract with defendants); see also State v. Karov, 170 Vt. 650, 652, 756 A.2d 1236, 1238-39 (2000) (mem.) (holding that defendant did not have standing to raise facial challenge to validity of aggravated assault statutes for their risk of creating double jeopardy grounds because he himself was not charged in way that created double jeopardy). Like the federal courts, we generally do not allow third-party standing. See Kimball, 2011 VT 81, ¶ 12. ("We have the same standing requirement as the federal courts . . . a party who is not injured has no standing to bring a suit." (quotations omitted)). Moreover, here we find no exception to the general rule against third party standing because appellants have not shown that those potential attendees of their rallies would likely be unable to assert their own First Amendment rights. See Craig v. Boren, 429 U.S. 190, 196

8

(1976) (holding that if liquor vendors could not assert rights of underage men then it would "materially impair" ability of those men to challenge gender-based alcohol purchase ban); Griswold v. Connecticut, 381 U.S. 479, 481 (1965) (holding that contraceptive providers could assert rights of patients in part because patients' rights would otherwise be diluted).

¶ 16.    Appellants next assert that Mr. Carter has standing to challenge the ordinance because there was a credible threat of enforcement of the trespass ordinance against him. Appellants cite the First Circuit's decision in N.H. Right to Life Political Action Comm. v. Gardner, 99 F.3d 8 (1st Cir. 1996), to support their standing argument in this regard.  In that case, the court held that if a plaintiff launches a pre-enforcement challenge to a statute, which, "on its face, abridges First Amendment rights," the plaintiff can claim injury from either a threat of enforcement or a First Amendment chilling effect.  Id. at 13.  Both injuries, however, "hinge on the existence of a credible threat that the challenged law will be enforced."  Id. at 14; see also Babbitt v. United Farm Workers Nat. Union, 442 U.S. 289, 298 (1979) ("A plaintiff who challenges a statute must demonstrate a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement."); Laird v. Tatum, 408 U.S. 1, 13-14 (1972) (holding that "chilling effect" claim must still be rooted in "specific present objective harm or a threat of a specific future harm" to convey standing).

¶ 17.    At the trial court hearing, Mr. Carter testified that while patronizing a bar on Church Street, he witnessed a scuffle between the bar's bouncers and another patron that ended up in the alley next to the bar.  Mr. Carter, concerned for the other patron's safety, went out onto Church Street to call 911.  Mr. Carter testified that when the ambulance and police arrived, the bouncers told the police to "trespass that guy," referring to Mr. Carter.  The police officer led Mr. Carter up Church Street to the officer's cruiser and proceeded to wave a "packet" of blank notice of trespass at him, telling him that "I could give you one of these."  Deputy Chief Jannine

9

Wright testified at trial that BPD officers use the same blank no-trespass form for both orders pursuant to 13 V.S.A. § 3705, an issue not on appeal here, as well as orders issued under the Marketplace District trespass ordinance. She further testified that until being given a written notice of trespass, a person would not know if the police were threatening them with a § 3705 notice of trespass for a specific location or a Marketplace District notice of trespass. Mr. Carter eventually left Church Street without being given any notice of trespass at all. The trial court found that Mr. Carter was in fact not threatened with enforcement of the ordinance.

¶ 18. Appellants' challenge to the court's determination regarding Mr. Carter's alleged injury depends upon whether the court correctly found that he was not threatened with enforcement of the trespass ordinance. Relying on the fact that the bouncer told the police to "trespass" Mr. Carter and that the general and Marketplace District notice of trespass are indistinguishable, the trial court found that it was more likely than not that Mr. Carter was threatened with a general notice of trespass for the bar and not for the Marketplace District. Moreover, Mr. Carter never received a ticket for one of the four underlying violations that would trigger application of the trespass ordinance. We uphold the trial court's finding that Mr. Carter was never threatened with enforcement of the ordinance because there is credible evidence to support the finding. See Okemo Mountain, Inc. v. Lysobey, 2005 VT 55, ¶ 8, 178 Vt. 608, 883 A.2d 757 (mem.) ("Findings will be sustained on appeal unless, viewing the evidence in the light most favorable to the prevailing party, there is no credible evidence to support the findings."). We therefore also uphold the court's conclusion that appellants do not have standing to bring a pre-enforcement challenge.

¶ 19. Appellants next claim standing under the "overbreadth doctrine," a doctrine which allows a plaintiff to mount a facial challenge to the constitutionality of a statute that is so broadly written as to present a realistic danger to "recognized First Amendment protections of

parties not before the Court." Members of City Council of L.A. v. Taxpayers for Vincent, 466 U.S. 789, 801 (1984). Appellants claim that even though they have not sustained any direct injury as a result of the ordinance, they can challenge it because the ordinance causes other parties not before this court to refrain from constitutionally protected speech.

¶ 20. The cases appellants cite in support of their claim are easily distinguishable. The plaintiffs in Taxpayers for Vincent, 466 U.S. 789 (1984), Broadrick v. Okla., 413 U.S. 601 (1973), and Thornhill v. Ala., 310 U.S. 88 (1940) all had Article III standing to bring cases on their own behalf. In Taxpayers for Vincent, the plaintiffs were directly injured by a municipal ordinance where the ordinance prohibited posting signs on public property and city employees removed election signs that the plaintiffs had attached to utility poles. 466 U.S. at 792-93. In Broadrick, the plaintiffs were charged with violating a statute regulating the political activities of civil servants. 413 U.S. at 602-03, 609. The petitioner in Thornhill was charged under a statute that prohibited "loitering or picketing." 310 U.S. at 91. As the Second Circuit recently explained, only parties who first "satisf[y] the Article III requirement of injury-in-fact" can bring an overbreadth facial challenge. Hedges v. Obama, 724 F.3d 170, 204 (2d Cir. 2013), cert. denied, 134 S. Ct. 1936 (2014) (quotations omitted). This is because the overbreadth doctrine concerns those "whose interests a plaintiff suffering Article III injury may represent," not whether the plaintiff can bring a facial challenge absent any actual injury. Id. Because appellants have not suffered any concrete injury that gives them standing, they cannot challenge the constitutionality of the ordinance under the overbreadth doctrine.

¶ 21. Finally, appellants claim they have standing to sue under a "derivative taxpayer" theory. Although taxpayer suits in Vermont are generally "recognized as appropriate vehicles for seeking relief from official action," to have standing a plaintiff must still demonstrate that she has either sustained some "direct loss" or that municipal assets have been "improperly wasted."

11

<u>Cent. Vt. Pub. Serv. Corp. v. Town of Springfield</u>, 135 Vt. 436, 438, 379 A.2d 677, 679 (1977). Merely invoking one's status as a taxpayer is not enough to invoke standing under a taxpayer suit. See <u>DaimlerChrysler Corp. v. Cuno</u>, 547 U.S. 332, 345 (2006) (affirming that taxpayers must show some direct injury to bring suit); see also <u>Schievella v. Dep't of Taxes</u>, 171 Vt. 591, 592, 765 A.2d 479, 481 (2000) (mem.) (denying taxpayer standing in part because plaintiffs did not show direct pecuniary injury). Because appellants have shown neither direct loss nor that taxpayer funds have been improperly wasted, they do not have standing as taxpayers to bring this suit.

 <u>Affirmed</u>.

          FOR THE COURT:

          _____

          Chief Justice