VERMONT SUPERIOR COURT
32 Cherry St, 2nd Floor, Suite 303,
Burlington, VT 05401
802-951-1740
www.vermontjudiciary.org

ENVIRONMENTAL DIVISION
Docket No. 25-ENV-00042



| | |
|---|---|
| **Alta Assets, LLC WW & WS Permit**<br>**WW-5-8796-1** | **MERITS DECISION** |

In this matter, Amy Hunter appeals a May 19, 2025 Wastewater System and Potable Water Supply Permit issued by the Agency of Natural Resources (ANR) to Alta Assets, LLC (Alta Assets) amending permit WW-5-8796 to relocate the dwelling, wastewater system and potable water supply for Lot 20, Applewood Road, Warren, Vermont (the Property).

This Court held a one-day merits hearing in this matter on November 18, 2025 via the WebEx videoconferencing platform. All parties attended. At the conclusion of trial, this Court took the matter under advisement.

In this matter, Ms. Hunter is self-represented. Alta Assets is represented by Brian P. Hehir, Esq. ANR is represented by Kane Smart, Esq.

### Statement of Questions

Ms. Hunter filed a Statement of Questions containing 40 Questions. Statement of Questions (filed July 9, 2025). Because of the length of the Questions, the Court does not restate them within this Decision. Many of the Questions present overlapping issues related to the placement of the systems, various environmental impacts, including wetland impacts, compliance with laws generally and specifically, property impacts, and the scope of ANR's review below. The Court addresses the Questions in batches of related issues. Additionally, there are numerous Questions that present issues outside the scope of this Court's jurisdiction and/or review in this appeal.

### Factual Findings

1. Alta Assets owns property located at Lot 20, Applewood Road, Warren, Vermont. Lot 20 is undeveloped.

2. In 2022, the Property's prior owner obtained a wastewater and potable water supply permit for a wastewater and water system for a three-bedroom home on the Property (the 2022 Permit). Ex. 2.

3. The 2022 Permit was not appealed.

4. On May 8, 2025, Alta Assets applied for an amended wastewater and potable water supply permit (Amended Wastewater and Potable Water Supply) as the proposed home on the Property had been relocated on Lot 20. The relocation of the home impacted the wastewater and well system authorized by the 2022 Permit. See Ex. 3.

5. Ms. Hunter was sent notice of the application via certified mail in May 2025. See Ex. 4.

6. Alta Assets retained John H. Stuart, a professional engineer, to assist it in the permit amendment process. During the Court's trial, Mr. Stuart was accepted as an expert in the field of water supply and wastewater systems design and permitting.

7. The amended wastewater system is on the southerly side of the Property and the proposed home site is located further to the north and down gradient from the system. Ex. 6.

8. The amended drilled well is located to the north of the house, down gradient from the wastewater system. Id.

9. Both the Amended Wastewater and Potable Water Supply have isolation zones that overhang onto western abutting property owned by Appellant Ms. Hunter. Id.

10. The isolation zones on Ms. Hunter's property required by the Amended Wastewater and Potable Water Supply are less than those within the 2022 Permit.

11. The amended wastewater system's isolation zone is in an area that overlaps with an isolation zone for Ms. Hunter's own wastewater system.

12. Ms. Hunter has a well on her property that is not located within any proposed isolation zone.

13. Groundwater generally flows from the southern portion of the Property around the wastewater system to the northeast corner of the Property. See Ex. 8.

14. Due to the topography of the Property, groundwater does not flow from the Property to Ms. Hunter's Property.

15. Generally, on Ms. Hunter's property, groundwater flows from the area where her own wastewater system is located towards her home.

16. The Amended Wastewater and Potable Water Supply systems will not have an impact on any natural resources, including wetlands.

17. Other than general considerations for the isolation zones, the Amended Wastewater and Potable Water Supply systems will not have any impact on any current use of Ms. Hunter's property.

18. On May 19, 2025, ANR issued WW-5-8796-1, the amended permit.

19. Ms. Hunter timely appealed to this Court.

<u>**Conclusions of Law**</u>

### I.    Jurisdictional Limitations

As set forth above, Ms. Hunter's Statement of Questions contains 40 Questions. While many of those Questions functionally ask whether the application complies with relevant law, a number of her Questions present issues that are outside the scope of this Court's subject matter jurisdiction, and therefore, cannot be adjudicated in this appeal. Because these Questions raise jurisdictional limitations, we address them first before turning to Questions properly before the Court in this matter.

#### a.    Notice

Ms. Hunter's Questions 1 and 2 address whether notice was provided to relevant property owners regarding the application on appeal.

To the extent that these Questions seek to raise alleged notice deficiencies to parties not before the Court, Ms. Hunter lacks standing to raise these issues on behalf of third parties not before the Court. See <u>Baird v. City of Burlington</u>, 2016 VT 6, ¶ 15. Thus, Questions 1 and 2 must be limited in scope, based on Ms. Hunter's standing in this matter, to addressing a failure to notify her individually. Here, Ms. Hunter was sent notification of this application and she does not dispute receipt of notice. Ex. 4. Thus, the Court concludes the notice to Ms. Hunter was sufficient.

#### b.    Private Property Impacts

Question 30 addresses private property rights that are beyond the scope of this Court's jurisdiction.

The Question asks whether the proposed septic isolation zone constitutes an encroachment or unauthorized intrusion. It is notable that Ms. Hunter has both a preexisting well and wastewater system on her property. The well is located outside the proposed wastewater system's isolation zone and the proposed drilled well's isolation zone. Ms. Hunter's wastewater system is also located on the south side of her property, and to the extent that it has an isolation zone, its isolation zone overlaps with the proposed wastewater system's isolation zone.[1]

First, the Vermont Supreme Court in <u>DJK, LLC WW & WS Permit</u>, affirming this Court's decision on appeal, recognized that isolation zones do not create a physical taking of land. 2024 VT

---

[1] The Court notes these facts because there appears to be some confusion about the effect the isolation zones have on any given property. If there is a wastewater isolation zone, one could not drill a well within that zone without a hydrogeologist opinion that the location is appropriate. Here, Ms. Hunter has a preexisting well on-site outside the scope of the isolation zone. For a well isolation zone, a property owner could not site a wastewater system within the isolation zone. Again, Ms. Hunter has a preexisting wastewater system on-site outside the scope of the drilled well isolation zone. The isolation zone does prohibit Ms. Hunter from using her property in those areas beyond those wastewater/potable water supply siting considerations.

34, ¶ 35—39.  To the extent this Question asserts that the isolation zone constitutes a physical taking of Ms. Hunter's land, that Question must be answered in the negative.

Further, the Vermont Supreme Court has recognized that this Court lacks jurisdiction in a wastewater and potable water supply permit appeal to determine whether an easement has been created over a neighboring parcel by virtue of an isolation zone.  Id. at ¶ 26.  At no point in this appeal has Ms. Hunter asserted what legal type of encroachment or intrusion she alleges the isolation zone is or may be.  Thus, to the extent that this Question seeks adjudication of whether the isolation zone creates some other private property interest, such as an easement, that issue is outside the scope of this Court's jurisdiction and the Court cannot make a ruling on that matter.[2]

### c.  Compliance with Zoning Regulations or Other Provisions of Law

Questions 25 through 29 largely address setback requirements and compliance with the Town of Warren's Land Use and Development Regulations (LUDR) and certain municipal permit conditions.   Further, many Questions refer to compliance with the LUDR or "all relevant State of Vermont and Town of Warren laws, rules, and regulations" generally.

This Court's scope of review in this de novo appeal is defined by the scope of ANR's review of the below permit application.  In re R.L. Vallee, Inc., No. 7-1-17 Vtec, slip op. at 6 (Vt. Super. Ct. Envtl. Div. July 18, 2017) (Walsh, J.) ("Our reach in this review is as broad as that of ANR when it considered the permit, but not broader") (citing In re Torres, 154 Vt. 233, 235 (1990).  We consider the application that came before ANR under the substantive standards that applied to ANR's review. 10 V.S.A. § 8504(h); V.R.E.C.P. 5(g).

In this matter, the applicable standards are set forth in the Wastewater Rules.  Application of the LUDR to this wastewater and potable water supply permit, or the system's compliance with the LUDR or municipal permitting generally, or compliance with any other unknown provision of Vermont law beyond the scope of the Wastewater Rules, lies beyond the scope of this Court's jurisdiction in this appeal.

Further, and for the same reasons, Questions 6 through 18 concern potential wetland impacts and seek determination of whether there are wetlands on the Property.  There are no provisions in

---

[2] The Court notes that Question 31 briefly mentions a deeded right by a third party to connect to Ms. Hunter's septic system.  The Court received no evidence of this right and, in any event, impacts on that right would necessitate resolving private property disputes beyond the scope of this Court's jurisdiction.  Further, the rest of Question 31 does not appear to relate to this deeded right and instead addresses general impacts from the systems.  General impacts from the systems are addressed by the Court's resolution of other issues before it, largely within Section II of this Decision.

the Wastewater Rules that govern wetlands or impacts to wetlands. Such issues would likely fall under ANR's wetlands rules. Wetland issues are beyond the Court's jurisdiction ion this appeal.[3]

For the above reasons, these Questions are **DISMISSED** sua sponte for presenting matters outside the scope of this Court's jurisdiction. See V.R.C.P. 12(h).

### d. ANR's Review

Questions 37 through 39 each concern ANR's review below. None of the Questions present issues that this Court may rule upon.

With limited exceptions not relevant here, we review appeals in a de novo trial. 10 V.S.A § 8504(h). As such, we hear the case "as though no action whatever has been held prior thereto." Chioffi v. Winooski Zoning Bd., 151 Vt. 9, 11 (1989). Therefore, we generally do not consider the underlying decision of, or proceedings before, the municipal panel below, "rather, we review the application anew as to the specific issues raised in the statement of questions." In re Whiteyville Props. LLC, No. 179- 12-11 Vtec, slip op. at 1 (Vt. Super. Ct. Envtl. Div. Dec. 13, 2012) (Durkin, J.).

As shown by their content and the header denoting the subject matter of this portion of the Statement of Questions, each of these Questions seek review of ANR's review below. This is inconsistent with this Court's de novo trial review of the application. As such, these Questions are **DISMISSED** sua sponte for presenting matters outside the scope of this Court's jurisdiction. See V.R.C.P. 12(h).

## II. Remaining Questions

All remaining Questions functionally ask, with limitations addressed above, whether the proposed systems and their locations/isolation zones comply with the Wastewater Rules.[4]

The application before the Court complies with the Wastewater Rules. The mound system is at the far south end of the property, with the drilled well in a similar location. The house site at the Property is downhill from the mound system. The location of the systems complies with the Wastewater Rules.

There is an isolation zone that extends onto Ms. Hunter's property and is generally in the location of where Ms. Hunter's wastewater system is located. To the extent that Ms. Hunter's system

---

[3] What's more, the uncontroverted evidence before the Court establishes that the wetlands on the north side of the Property, the opposite side of the system, are far removed from the development and there will be no impact to those wetlands.

[4] A number of the Questions ask whether the placement of the systems/isolation zones "properly protect" various features of Ms. Hunter's property. Given the scope of the Court's review in this matter, the Court interprets this as generally asking whether the systems comply with the Wastewater Rules.

has an imposed isolation zone,[5] it would overlap with the proposed wastewater system's isolation zone. This is not prohibited by the Wastewater Rules.

The systems will not impact any natural resource. This is because groundwater on the Property flows away from the Hunter property and does not enter it, instead flowing towards the northeast corner of the Property. In fact, groundwater on the Hunter property, flowing from the area of Ms. Hunter's preexisting wastewater system, generally flows in the direction of Ms. Hunter's home. Because of the topography of the two properties and the location of the systems, there will be no impact on the Hunter property from the Amended Wastewater and Potable Water Supply system. By extension, there will be no impact on any use presently occurring on the Hunter property.[6]

Ultimately, the credible evidence before the Court, largely provided by Mr. Stuart, a professional engineer accepted as an expert in this case, establishes that the application before the Court complies with the Wastewater Rules. This Court received no evidence that challenges that credible testimony. Ms. Hunter has not made a specific assertion as to why any aspect of these systems, particularly the location, does not comply with the Wastewater Rules. Nor did she submit evidence at trial to contravene Mr. Stuart's expert testimony as a professional engineer credibly establishing that the systems do comply with the Wastewater Rules.

For the foregoing reasons, we conclude that the application complies with the Wastewater Rules.

## Conclusion

For the foregoing reasons, the Court concludes that the application on appeal complies with the Wastewater Rules. To the extent that the Questions before the Court seek adjudication of matters outside the scope of this Court's jurisdiction, such as deficiencies in notice to individuals not before the Court, compliance with laws outside the scope of this Court's review in this appeal, and issues

---

[5] The Court did not receive evidence of Ms. Hunter's system and any isolation zone, beyond its location generally. Ms. Hunter's Questions, however, appear to presuppose that the system has a pre-existing isolation zone that at least partially overlaps with the proposed isolation zone.

[6] Ms. Hunter's testimony was limited to her concerns with impacts from the Project, but also included concerns related to the value of her home, what the ultimate use will be of the home Alta Assets may build in the future on the Property, and how the neighborhood roads may be impacted by the future construction of the home. None of these impacts are related to the systems before the Court on appeal, nor are they protected by the Wastewater Rules. Beyond her general assertion that there will be some downhill and/or offsite impact to her property, she has not asserted any other alleged impact from the proposed systems.

related to ANR's review below, those matters are **DISMISSED**.  The permit issued below by ANR is **AFFIRMED**.

This concludes the matter before the Court.  A Judgment Order accompanies this Decision. Electronically signed this December 8, 2025 pursuant to V.R.E.F. 9(D).

Thomas G. Walsh, Judge
Superior Court, Environmental Division