VERMONT SUPERIOR COURT
Environmental Division
32 Cherry St, 2nd Floor, Suite 303,
Burlington, VT  05401
802-951-1740
www.vermontjudiciary.org

Docket No. 25-ENV-00038



| Khan Subdivision Application |
| --- |

## ENTRY REGARDING MOTION

Motion:      Motion to Dismiss

Filers:      Nafis and Sarita Khan, Pro Se

Filed date:   November 25, 2025

> Appellant's Response, filed by Edward Deptula, on December 1, 2025
>
> Town of Montgomery's Response to Applicant's Filing, filed by Michael Tarrant, Esq., on December 2, 2025

**The motion is GRANTED.**

This is an on-the-record appeal of a May 5, 2025 decision by the Town of Montgomery (Town) Development Review Board (DRB) approving an application submitted by Nafis and Sarita Khan (Applicants) for subdivision of an undeveloped ±32-acre lot across from 561 Highland Drive, Montgomery Center, Vermont (the Property).  Neighboring landowner Edward Deptula (Appellant) appealed the DRB's decision to this Court on June 2, 2025.  Both Applicants[1] and Appellant are self-represented.  The Town, represented by Attorney Michael Tarrant, has actively participated in this appeal.  Presently before the Court is Applicants' motion to dismiss this appeal for Appellant's lack of standing.  Appellant opposes the motion.  The Town joins in the motion.

First, Applicants' November 25, 2025 "motion" to dismiss is not explicitly titled as such and is embedded in their response to Appellant's brief, such that it requires a degree of liberal construction by the Court.  It remains appropriate, however, to consider the November 25th filing as a motion because "it is well established that the submissions of a pro se litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest."  Triestman v. Fed. Bureau of Prisons,

---

[1] Applicants did not file a notice of appearance in this appeal until August 19, 2025.  They did not cross-appeal. Thus, as the Court noted in an Entry Order dated August 27, 2025 denying Appellant's motion to dismiss Applicants as parties to this case, they are generally limited to addressing those issues raised in Appellant's Statement of Questions.  See In re Khan Subdivision Application, No. 25-ENV-00038 (Vt. Super. Ct. Envtl. Div. Aug. 27, 2025) (McLean, J.).

470 F.3d 471, 474 (2d Cir. 2006); see also In re Morse, 138 Vt. 327, 329 (1980); TLOC Senior Living, LLC v. Bingham, 2016 VT 44, ¶ 13; Foster-Mendicino v. Mendicino, 2012 WL 2880571 (July 11, 2012).[2]

Reviewing the November 25th filing shows that Applicants intended to raise the standing issue to this Court. It states that Applicants "do not understand why Mr. Deptula has standing" to appeal the DRB's decision to this Court and goes on to lay out multiple reasons why they believe that to be the case. Applying the liberal construction standard discussed above, the Court construes this as a motion to dismiss for lack of statutory standing. Further, V.R.C.P. 12(h)(3) states that "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." Because standing informs subject matter jurisdiction, and there is a suggestion by the parties that Mr. Deptula lacks standing, we have an independent obligation to review Mr. Deptula's standing and its implications for this Court's subject matter jurisdiction.

The timing of the Applicant's motion to dismiss is unfortunate, having been filed after Appellant and the Town both prepared and submitted their merits briefs.[3] Ideally, to conserve the resources of courts and litigants, standing issues should be raised as early in the litigation process as possible. See e.g., In re Verizon Wireless Barton Permit, 2010 VT 62, ¶ 18 (discussing rationale for requiring motions asserting claims of party status to be filed with notice of appeal under V.R.E.C.P. 5(d)(2)); see also Warth v. Seldin, 422 U.S. 490, 517–18, 95 S.Ct. 2197 (1975) (describing the rules of standing as "threshold determinants of the propriety of judicial intervention.") (emphasis added). Despite this, because of the implications of a motion to dismiss for lack of standing on the Court's subject matter jurisdiction and review under V.R.C.P. 12(b)(1), the motion may be raised at any time such that the delay in filing does not constitute independent grounds to deny the motion. See V.R.C.P. 12(b).

A party's standing is a question of subject matter jurisdiction. Brod v. Agency of Nat. Res., 2007 VT 87, ¶ 8 (citation omitted). "Because standing is a necessary component of the court's subject matter jurisdiction, it cannot be waived, and its absence can be raised at any time." Id. at ¶ 2; Bischoff v. Bletz, 2008 VT 16, ¶ 15 (citations omitted). When reviewing a motion to dismiss for lack of subject matter jurisdiction pursuant to V.R.C.P. 12(b)(1), the Court accepts as true all uncontroverted factual

---

[2] Appellant, also self-represented in this matter, is aware of this general interpretation of self-represented filings, as he has repeatedly urged the Court to read his own pro se filings liberally in the manner the Court applies here to Applicants' motion. While Appellant cites to alternative cases, the general principle of construing pro see submissions liberally applies to both parties presently before the Court. The Court will therefore construe both pro se parties' filings liberally.

[3] Applicants did not file a merits brief.

allegations and construes them in a light most favorable to the nonmoving party. Rheaume v. Pallito, 2011 VT 72, ¶2, 190 Vt. 245.

Pursuant to 10 V.S.A. § 8504(b)(1), "an interested person, as defined by 24 V.S.A. § 4465, who has participated as defined in 24 V.S.A. § 4471 in the municipal regulatory proceedings under [Chapter 117] may appeal to the Environmental Division an act or decision made under [Chapter 117]" by an appropriate municipal panel. Interested person is defined, in relevant part, as:

> [1] [a] person owning or occupying property in the immediate neighborhood of a property that is the subject of the [decision under appeal] … [2] who can demonstrate a physical or environmental impact on the person's interest under the criteria reviewed, and [3] who alleges that the decision or act, if confirmed, will not be in accord with the policies, purposes, or terms of the plan or bylaw of that municipality.

24 V.S.A. § 4465(b)(3).

While "immediate neighborhood" is not defined by statute, to determine whether a property is in the immediate neighborhood of a proposed project we "will consider the physical environment surrounding the project and the nexus between the project, the potential party, and the potential [party's property]." See Two Bad Cats, LLC Conditional Use, No. 169-12-14 Vtec, slip op. at 3 (Vt. Super Ct. Envtl. Div. May 29, 2015) (Walsh, J.) *aff'd* No. 2015-238 (Nov. 19, 2015) (unpub. mem.) (citations omitted). Distance between a potential party's property and the proposed project is one factor that we consider in determining "whether the party potentially could be affected by any aspects of the project which have been preserved for review on appeal." Id. (internal quotations omitted); see also In re Bostwick Rd. 2-Lot Subdivision & Final Plan Application, No. 2006-128, slip op. at *2–3 (Jan. 2007) (unpub. mem.) (affirming Environmental Court's decision that party's property was not in the immediate neighborhood of a proposed project because: the properties were not adjacent; they were separated by "extensive acreage, dense vegetation, and rolling hills" so that one was not visible from the other; and because there was no indication that traffic would be affected); Vermont Agric. & Envtl. Lab CU & SP, No. 72-7-16 Vtec, slip op. at 2 (Vt. Super. Ct. Envtl. Div. Jan. 3, 2017) (Walsh, J.) (dismissing for lack of standing where "[b]etween . . . residence and the proposed project are woodlands, fields, an orchard, and the main campus of Vermont Technical College (VTC), which is made up of numerous buildings, parking areas, and internal roads.").

The "physical or environmental impact" that an appellant alleges must be sufficiently concrete and particularized. In other words, the injury must not be too remote or speculative and it must be sufficiently specific to the appellant and not shared by all members of the local public. In re UVM Cert. of Appropriateness, No. 90-7-12 Vtec, slip op. at 11 (Vt. Super. Ct. Envtl. Div. Feb. 26, 2013)

(Walsh, J.).  Further, there must be a plausible causal link between the activities authorized by the permit and the risk of injury.  See 110 E. Spring St. CU, No. 11-2-16 Vtec, slip op. at 4–5 (Vt. Super. Ct. Envtl. Div. Nov. 28, 2016) (Walsh, J.) (discussing causation in the context of a neighbor's challenge to a municipal permit).  Thus, to survive a motion to dismiss for lack of standing in an appeal from a municipal panel an appellant must "allege sufficiently concrete facts within their knowledge tending to demonstrate the reasonable possibility of those injuries."  In re Brewster River Mountain Bike Club CU, No. 21-ENV-00103, slip op. at 3 (Vt. Super. Ct. Envtl. Div. June 30, 2022) (Durkin, J.) (citing Goddard Coll. CU, No. 175-12-11 Vtec, slip op. at 2–3 (Vt. Super. Ct. Envtl. Div. July 5, 2012) (Walsh, J.) ("[T]o survive a motion to dismiss for lack of standing in an appeal from a municipal panel . . . Appellant must show only that there is a reasonable possibility that Applicant's proposed project will result in a physical or environmental impact on Appellant's interests under the Regulations."))

In an on-the-record appeal, we review a party's standing based on the record developed before the DRB.  In re VTRE Invs., LLC Conditional Use Duplex, No. 2019-050, slip op. at 2 (2019) (unpub. mem.); In re RACDC Retention Pond, No. 62-5-12 Vtec, slip op. at 7 (Vt. Super. Ct. Envtl. Div. Jan. 29, 2013) (Walsh, J.) (In an on-the-record appeal, "we must make our own determination as to whether Appellant adequately alleged standing to appeal . . . but we are confined to base our determination on the record before the DRB.").  Accordingly, we look to Appellant's testimony before and submissions to the DRB, as well as his filings in opposition to this motion, to determine whether he met the threshold burden of demonstrating standing under 24 V.S.A. § 4465(b)(3).  In doing so, the Court has reviewed the materials in the record and listened to the electronic (i.e., MP3 digital audio) recording(s) of the DRB hearing and concludes that Appellant has: (1) failed to show that he owns or occupies property in the immediate neighborhood of the Property, and (2) failed to identify a physical or environmental impact to his individual interests under the criteria reviewed.[4]

It is undisputed that Appellant requested "interested party status" during the underlying DRB hearing held on March 27, 2025.  The minutes of that hearing state, in pertinent part:

> **Evidence is submitted by Ed Deptula noted as [Exhibit] B1 regarding interested persons:** Mr. Deptula has requested interested party status though he is not included in the list of abutting property owners.  He owns 3 properties in the immediate neighborhood which

---

[4] In an Entry Order issued June 25, 2025, the Court agreed to accept electronic recordings of the DRB hearing in place of a written transcript.  The Court listened to the entirety of the electronic recordings in connection with its review of the pending motion.  The recordings indicate that Appellant relied primarily on the written materials discussed herein to establish his standing (i.e., he did not provide detailed oral comments regarding his alleged interests) and otherwise reinforce the Court's conclusions here.

is in the same subdivision as the applications, Leisure Properties, Inc. He also has an environmental interest which he feels may inpact [sic] his property. Applicants were asked if they had any problem with him being given interested party status. **They did not.**

Record at 014 (emphasis in original).

Exhibit B1 was submitted by Appellant to the DRB and included a document entitled "Edward Deptula Standing as an Interested Person." Record at 021. That document largely mirrors the above-cited language and provides:

> (1) I own three properties within the same sub-division LEISURE PROPERTIES INC.,
>
> (2) The applicant's site plan intends to sub-divides one parcel into four parcels.
>
> (3) Z.A. Ellen Fox informed me **Section 3.3 C applies to the applicant's land.**
>
> (4) According to Montgomery Zoning Section 3.3 C, three of those four parcels can then be sub-divided into **138 lots.**
>
> (5) The applicant site-plan properties lie within the Conservation II Zoning District and the Applicant wishes to change the sized [sic] of that required lot.
>
> (6) If so, then our zoning bylaws are at issue, unless Section 3.3 C is arbitrary and capricious and cannot be administered under the current laws of Vermont.
>
> (7) Conservation II has a steep hill-side watershed which the waters [sic] eventually run downhill to my properties. Thus, **I also have an environmental interest** which may impact my properties.
>
> (8) My properties and the applicant's four parcels have deeded access to a common Right of Way, i.e., Christmas Road. Thus, I have an interest as to how my Right of Way may be affected by traffic and safety.

Record at 049 (emphasis in original).

Appellant also sent an email on March 13, 2025, before the DRB's initial hearing, to the Town's Zoning Administrator, containing information regarding his alleged status as an interested person. Record at 082-083; see also Record at 024-026. In that correspondence, Appellant stated that he owned property within the Leisure Properties, Inc. subdivision and appears to assert that he paid for maintenance of the subdivision roadways. Id. at 082. He also stated general water-related concerns (comparable to the above) as a downhill landowner. Id.

It is largely undisputed that the parties each own property within a residential subdivision known as "Alpine Haven" (developed in Montgomery by Leisure Properties, Inc.).[5] Appellant's land does not adjoin the Applicants' proposed subdivision and, thus, he was not included in the original notice of hearing sent to abutting property owners.[6] Record at 002, 012, 014. The Property is undeveloped and located across from 561 Highland Drive, also owned by Applicants, which is improved by a dwelling (referred to in the record as a "chalet"). Record at 006, 011, 012, 014, 018. Highland Drive, like the other roads in the Alpine Haven subdivision, is a private road generally open to public traffic over which Applicants have a right-of-way in common with others. Record at 016, 018, 019, 022, 082. Appellant owns land within the same subdivision located off Christmas Road, also a private road. Record at 021, 083–084.[7] Both Christmas Road and Highland Drive are a part of the private roadway network owned by the Alpine Haven Property Owners Association, and both Association members and non-members living in Alpine Haven pay to maintain the roads. Record at 082. Christmas Road, as well as at least one other unnamed road in the Alpine Haven subdivision, provides ingress and egress to and from Vermont Route 242. Record at 036. While Highland Drive and Christmas Road connect at one point, Highland Drive (and the Applicants' property proposed for subdivision) is uphill (to the north) and higher in elevation than Christmas Road. Record at 036.

Regarding whether Appellant owns property in the "immediate neighborhood" of the Applicants' property proposed for subdivision, the Court concludes that he does not. The properties are not adjacent. While the precise distance between the properties does not appear in the record, distance is but one factor that we consider in our evaluation of standing under § 4465(b)(3).[8]

---

[5] The Court understands from Appellant's response to Applicants' motion to dismiss that the residential subdivision known colloquially as "Alpine Haven" is located in both Montgomery and Westfield, Vermont, with the Westfield portion generally comprised of the "Alpine Haven, Inc. subdivision" lots and the Montgomery Center portion comprised of the "Leisure Properties, Inc. subdivision" lots, and that both Appellant's property and Applicants' property are technically part of the Leisure Properties, Inc. subdivision and subject only to Montgomery zoning. Nonetheless, for convenience and consistent with apparent common practice, the Court refers to the broader subdivision (including the portions in both Montgomery and Westfield) as "Alpine Haven."

[6] Eight properties are listed as abutters to the subject property and the extent of the roadway network and Montgomery Zoning Map suggest that there are numerous other properties in the Alpine Haven subdivision. Record at 002, 012, 036.

[7] From the address listed in the signature block of his email, it appears that Appellant resides at 80 Christmas Road.

[8] The Town's Response to Applicant's motion to dismiss includes maps (or portions of maps) depicting lots in the Alpine Haven subdivision, including the location of Applicants' and Appellant's properties, and its roadway network. We have not relied on these maps in reaching our conclusion that Appellant's property is not in the "immediate neighborhood" because the maps were not part of the record before the DRB. VTRE Invs., No. 2019-050, slip op. at 2 (2019) (unpub. mem.) ("In on-the-record cases, the Environmental Division acts as an 'appeals court,' and its review is limited to the record developed below."). The Court did review the Zoning Map contained in the Montgomery Zoning

Considering the physical environment, the record indicates that the Property is located on a separate road some distance uphill from Appellant's property. The Property is in a relatively large residential subdivision with multiple other properties in between, connected only by an extensive roadway network with different routes of access. There is no indication anywhere in the record and no allegation by Appellant that the Property is visible from Appellant's residence or any other part of his property, or that he regularly visits the area where the Property is located within the subdivision. Thus, Appellant has failed to establish that he resides in the immediate neighborhood of the Property.

To the extent that Appellant asserts that ownership of property within the same subdivision as the Property conclusively establishes that he owns property in the "immediate neighborhood," that assertion is unsupported by law. As set forth herein, subdivisions may be large and ownership of property within one does not alone establish this requirement of 24 V.S.A. § 4465(b)(3).

Despite concluding that Appellant has failed to establish standing by owning property in the immediate neighborhood of the Property, he also has not alleged a physical or environmental impact on this property with the requisite degree of specificity/particularity required to survive a motion to dismiss for lack of standing. Nor has he alleged a plausible causal link between the activities authorized by the subdivision permit (i.e., the creation of three lots) and the risk of injury. In other words, he has not alleged sufficiently concrete facts tending to demonstrate a reasonable possibility of injury arising from the subdivision.

What Appellant has alleged (see Exhibit B1, referenced above) is that: (1) a portion of the proposed subdivision is located in the Conservation II zoning district, which "has a steep hillside watershed which waters eventually run downhill to my properties" and therefore he has "an environmental interest which may impact [his] … properties," and (2) he has a right of way over Christmas Road and contributes to the cost of repair and maintenance of the private road system, which provides access to lots in the Alpine Haven subdivision, and thus he has an interest "as to how my Right of Way may be affected by traffic and safety." These alleged impacts are too remote and speculative, and do not demonstrate a reasonable possibility that Applicants' proposed project will result in a physical or environmental impact on Appellant's interests under the Regulations.[9]

---

Regulations, referenced by the DRB and the parties during the local hearing (as evidenced by the electronic recordings), to better understand the location and layout of the Alpine Haven (Leisure Properties) subdivision in Montgomery.

[9] To the extent that Appellant attempts to assert third-party standing on behalf of others, he may not do so. See Baird v. City of Burlington, 2016 VT 6, ¶ 15 ("we generally do not allow third-party standing").

In so concluding, the Court is mindful that, at this point, Applicants' subdivision proposal involves nothing more than drawing lines on a plot plan. No physical development whatsoever is proposed and therefore it is difficult to imagine how Appellant or his property could be injured or otherwise negatively impacted by the subdivision proposal generally. The Court agrees with the Town that the subdivision is simply "redrawing lines on a map." Nothing else on the ground is proposed to change physically. And, while it is true that water tends to run downhill, Appellant has not explained with any degree of specificity how the subdivision (i.e., lines on a map), without more, may result in new or increased runoff that negatively affects his property. Instead, he merely speculates in a very general and conclusory sense, about a potential impact. He also has not alleged a plausible link between potential runoff from the subdivided lots and the risk of injury to his property, beyond the unremarkable proposition that water runs downhill and his lots are located somewhere downhill from the subdivision. There is no allegation of any hydraulic connection between his property and the Property or explanation of how the project presently before the Court may change that connection. Therefore, he has failed to demonstrate a reasonable possibility that runoff from the proposed subdivision will result in a physical or environmental impact on his property under the relevant criteria in the Town's zoning regulations.[10]

Similarly, Appellant fails to allege a concrete and sufficiently particularized injury arising from traffic that may be generated by the proposed subdivision.[11] First, and again, the application proposes no development such that it is difficult to comprehend how the new lot lines will generate traffic that will impact Appellant. Additionally, Appellant suggests that there could be interference with his property rights (i.e., his right-of-way over Christmas Road and the common roadway system) through increased traffic, and additional costs to maintain the roads. He does not, however, explain how the creation of three new lots without any proposal for development would materially and negatively

---

[10] The Court also notes that Montgomery does not have duly adopted subdivision bylaws. Instead, proposed subdivisions are regulated only through the definition of "land development" (i.e., the division of a parcel into two or more parcels) in the Montgomery Zoning Regulations (2018) and typically require only review and approval by the Zoning Administrator (ZA) (although here the ZA referred the subdivision proposal to the DRB for review of the project's access off a private road, Highland Drive). Record at 015, 016, 019. Therefore, to the extent that the second prong of 24 V.S.A. § 4465(b)(3) refers to "a physical or environmental impact on the person's interest under the criteria reviewed," those criteria should have only related to access since that was the basis for the referral to the DRB.

[11] Appellant's concerns regarding both potential runoff and traffic/safety are general in nature, at least as presented in this case, not specific to him, and are shared by other owners in the Alpine Haven subdivision, if not the public at large.

affect his access rights or increase his maintenance costs.[12] He has also failed to allege any facts (concrete or otherwise) demonstrating a reasonable possibility that he will be negatively impacted by the project from a traffic safety perspective. The Alpine Haven subdivision already contains multiple properties, roadways and ingress/egress points (as discussed above). The facts alleged by Appellant, individually and collectively, do not demonstrate a specific safety-related injury or a plausible causal link between the proposed subdivision and a risk of injury to his safety interest in the common right-of-way. Thus, Appellant has not met his burden, however minimal, to allege specific facts showing a reasonable possibility that (potential future) traffic from the proposed subdivision will negatively impact his interests in the common right-of-way and the safe use thereof.

As noted above, during the hearing below the DRB voted to grant Appellant "interested party status," to which Applicants allegedly did not object.[13] Record at 018, 014. However, neither the DRB's vote, Applicants' initial (purported) acquiescence to Appellant's interested person request, nor this Court's prior observation that Applicants were limited to addressing only those issues raised in their Statement of Questions, can insulate Appellant from a challenge to his standing at this time. As discussed above, standing is "a jurisdictional prerequisite" and "[b]ecause standing is a necessary component of the court's subject matter jurisdiction, it cannot be waived, and its absence can be raised at any time." In re Bruyette, 2022 VT 3, ¶ 6 (citation omitted). Further, Appellant had an opportunity to, and did, assert his standing before the DRB and to respond to Applicants' challenge to his standing before this Court. In his response, Appellant asserts only that he had already "fully briefed" the DRB and the Court regarding his standing and he argues that Applicants have waived their ability to challenge his interested party status. For the reasons stated above, this is incorrect. Standing remains a proper, threshold jurisdictional issue before this Court, see V.R.C.P. 12(h), and Appellant has not met his burden to demonstrate that he qualifies as an interested person under 24 V.S.A. § 4465(b)(3).

In conclusion, Appellant does not own property in the immediate neighborhood of Applicants' proposed subdivision and he has failed to adequately demonstrate a physical or environmental impact on his interests under relevant criteria of the Zoning Regulations. Accordingly, we **GRANT** Applicants' motion to dismiss for lack of standing.

---

[12] The potential for increased road maintenance costs is speculative and, more importantly, does not constitute a "physical or environmental impact."

[13] Notwithstanding what is stated in the minutes, *supra*, the electronic recording of the DRB hearing indicates that Applicants' lack of objection to Appellant's standing request was not unequivocal and that they did, in fact, raise several issues and concerns related thereto. While they did not fully articulate their concerns, the Court finds, based on the recording, that Applicants did have "a problem" with Appellant "being given interested party status" by the DRB that was not reflected fully in the minutes. See Montgomery DRB Hearing (3/27/25), MP3 Audio Files, Part 1 at 11:55/1:24:25.

This concludes the matter before the Court.  A Judgment Order accompanies this Decision.

Electronically signed on December 12, 2025, pursuant to V.R.E.F. 9(d).

Joseph S. McLean
Superior Court Judge
Environmental Division